Filed 2/21/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re AARICA S., a Person Coming Under the Juvenile Court Law. | B248010 (Los Angeles County Super. Ct. No. MJ20515) |
| THE PEOPLE, Plaintiff and Respondent, v. AARICA S., Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Catherine J. Pratt, Judge. Affirmed.

Kimberly Howland Meyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, and Victoria B. Wilson, Deputy Attorney General, for Plaintiff and Respondent.

Aarica S. appeals from an order of wardship (Welf. & Inst. Code, § 602) following a finding that she committed the crime of soliciting prostitution (Pen. Code, § 647, subd. (b)).[1] Appellant contends that because she was a victim of human trafficking, the juvenile court erred in denying her motion under Evidence Code section 1161, subdivision (a), to exclude evidence that she committed a commercial sex act, namely, the solicitation of prostitution underlying the wardship petition. We hold that Evidence Code section 1161, subdivision (a), applies only when there is a specific causal connection between the person's status as a victim of human trafficking and the commission of the commercial sex act at issue. Because, supported by substantial evidence, the juvenile court found that appellant was not a victim of human trafficking in relation to the solicitation of prostitution at issue here, we conclude that Evidence Code section 1161 does not apply, and affirm the juvenile court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 31, 2013, around 5:40 p.m., Los Angeles Police Department Officer Roberto Morales was working undercover, monitoring prostitution activity near James M. Wood Avenue and Lake Avenue in Los Angeles. Officer Morales saw appellant speaking to a pedestrian on the corner. He became suspicious because it was a high prostitution area. A fellow officer told him appellant had been seen trying to attract the attention of vehicles driven by lone male drivers for approximately five minutes.

---

[1] The court's order of wardship also was based on allegations in two other petitions. Appellant admitted to the allegations in the other two petitions and does not challenge those findings on appeal. The facts set forth in this opinion pertain only to the petition alleging that appellant solicited prostitution.

2

Officer Morales drove his car toward appellant and made eye contact with her. Appellant approached his front passenger side window. Officer Morales asked appellant if she needed a ride. Appellant replied that she did not need a ride but asked if he needed a date, which Officer Morales understood to be a term commonly used by prostitutes. Officer Morales told appellant that he was looking for a date, and appellant asked if he was a cop. He told her he was not, and she asked if she could get in his car. Appellant got in the car, and Officer Morales began driving.

Appellant asked Officer Morales "if that area was where the girls work normally," which Officer Morales understood to mean working as prostitutes. Appellant asked what Officer Morales wanted, and he told her he wanted a blow job. Appellant asked him if $40 was a good price, and Officer Morales agreed. He asked her if she had a condom and a place to go, but she said that she had neither. He asked if she would perform the act without a condom, and she agreed, but she asked for more money. Officer Morales offered $60, and appellant replied, "Yes, that is what I am talking about. You are my kind of man." Appellant then attempted to touch his groin, which Officer Morales explained was commonly done by prostitutes who are attempting to determine if someone is an undercover officer. Officer Morales blocked her hand, and she asked him to touch her. He touched her kneecap and immediately removed his hand. Officer Morales testified that she asked him to touch her in order to determine if he was an officer because officers are not allowed to touch them improperly. Officer Morales continued driving until other officers stopped them via a prearranged signal and arrested appellant.

Officer Morales testified that he did not know that appellant was a minor and only learned this after her arrest. Appellant was 17 years old at the time of the proceedings.

On February 1, 2013, a third petition was filed (see fn. 1, *ante*), alleging that appellant solicited prostitution in violation of Penal Code section 647, subdivision (b), a misdemeanor.[2] Appellant denied the allegations of the petition.

On February 21, 2013, a contested hearing was held on the petition. Appellant moved to dismiss the petition and to exclude evidence that "she 'has engaged in any commercial sexual act as a result of being a victim of human trafficking,'" relying on the Californians Against Sexual Exploitation Act (CASE Act) and Evidence Code section 1161, subdivision (a).

In support of her motion, appellant presented the following evidence to establish that she was a victim of human trafficking. Appellant testified that her father raped her when she was three years old. When appellant was 14 years old, her friend introduced her to a pimp, Eric Williams, in Las Vegas, Nevada. Williams explained "the rules" to appellant, telling her to be friendly, stop men and talk to them, make a price and perform sexual acts with them. He took her to the Strip in Las Vegas, but she did not know what to do, so she returned to him. Williams and his uncle forced her to have sex with them and then dropped her off at a hotel. Appellant ran away and never saw him again. Appellant had an abortion when she was 15.

When appellant was 16, a pimp named "Jigga" told her she could be part of his "family" because he had other prostitutes and would take care of her. Jigga

---

[2] On April 20, 2011, a petition was filed under Welfare and Institutions Code section 602, alleging that appellant committed two misdemeanor counts of battery in violation of Penal Code section 242. A second petition was filed on November 26, 2012, alleging one misdemeanor count of loitering to commit prostitution in violation of Penal Code section 653.22, subdivision (a). Appellant denied the allegations of those petitions.

took appellant to a street where prostitutes walked up and down the street. Appellant had sex with men, and she gave all the money to Jigga. Jigga gave her food and a place to live. Jigga hit appellant in the face with his fist when she did not make enough money. Jigga forced appellant to have sex multiple times. Appellant ran away after a month because she grew tired of being abused.

Appellant's next pimp was named "Thizzo." Thizzo forced appellant to have sex with him, and he told her she was part of his family. Thizzo had a prostitute he called his "main," and he told appellant if she wanted to be his main, she needed to make more money. Thizzo kept all the money appellant made. Thizzo forced appellant to perform sex acts with men every day for about a week, and then she ran away from him.

Appellant testified that she was afraid each time she ran away from a pimp, explaining, "Because I am theirs. I am their property, so for me to run away from them it is not good." When asked why she thought she was their property, she replied, "Because I was. They told me like 'you're mine' and I agreed."

After leaving Thizzo, appellant lived with a woman called "Dayday," who became her next pimp. Dayday forced appellant to perform sexual acts and kept all the money she made, providing appellant with a house, food, and clothes. Appellant left after a week-and-a-half because Dayday began to hit her and become abusive.

After leaving Dayday, appellant had a pimp named Gino, who took the money appellant made. Appellant left Gino when a pimp named Kino drove past her with two girls, who started talking to appellant. They asked appellant if she wanted to do drugs with them and "hang out because they thought that [she] was pretty." They showed appellant their clothes and money, and then Kino started telling appellant she would "fit perfectly with them." Appellant stayed with Kino

for about two weeks. She had several other pimps, but she stopped when she became pregnant from one of the pimps in May 2012. She had a second abortion.

Appellant testified that she had had a total of approximately 10 pimps. She testified that she never received any of the money she made and was abused by some or most of the pimps. She also testified that she was afraid of some of the pimps.

Under cross-examination, appellant testified that, on January 31, 2013, the date of her arrest, she did not have a pimp and was living with her grandmother. Her grandmother was providing her with food and housing at that time. On the date of the arrest, she left her grandmother's home and took a bus to go enroll in school. She made plans to meet her sister after enrolling herself in school.

When asked why she decided to approach Officer Morales, she explained that she saw him circling the neighborhood. She explained that she was thinking, "'Don't go to the car; don't do it.' 'You are better than that.' But he just kept coming by, so I just decided that I could do whatever he wanted really quick and then have money in my pocket because I didn't have any money." She agreed that no one forced her to get into the car and that she did not have a pimp, so she would get to keep the money she made. She had not had a pimp since November 2012.

The court denied appellant's motion to exclude evidence relating to her having solicited a commercial sex act with Officer Morales. The court reasoned that, when appellant approached Officer Morales, "she was acting as an independent contractor, nobody threatening her or threatening to kill her if she doesn't make money. She wasn't working for anybody or paying anybody any money. [¶] I don't think based upon that she was a victim of sexual trafficking. And when the incident occurred on the 31st of January, that she was acting independently on her own with no solicitation or encouragement by anyone else to

6

get her to do it.  I don't think it has any connection.  You would have a much stronger case at the time she was doing it [if] she was still under the power and under the control of one of these pimps, but she was not.  And it appeared that it was several months before that she wasn't."

The juvenile court found true the allegations of the petition filed on February 1, 2013, sustained the petition, and declared appellant to be a ward of the court pursuant to Welfare and Institutions Code section 602.  The court removed appellant from the care and custody of her parents, placed her in the care, custody and control of the probation officer, and ordered her suitably placed.  The court ordered the maximum term of confinement to be 10 months and ordered her to be moved to Central Juvenile Hall for placement screening.  Appellant filed a timely notice of appeal.

## DISCUSSION

The CASE Act was approved by California voters in November 2012.  The purpose of the act was stated as follows:

"The people of the State of California find and declare:  [¶]  1.  Protecting every person in our state, particularly our children, from all forms of sexual exploitation is of paramount importance.  [¶]  2.  Human trafficking is a crime against human dignity and a grievous violation of basic human and civil rights.  Human trafficking is modern slavery, manifested through the exploitation of another's vulnerabilities.  [¶]  3.  Upwards of 300,000 American children are at risk of commercial sexual exploitation, according to a United States Department of Justice study.  Most are enticed into the sex trade at the age of 12 to 14 years old, but some are trafficked as young as four years old.  Because minors are legally

incapable of consenting to sexual activity, these minors are victims of human trafficking whether or not force is used.  [¶] . . . [¶]

"The people of the State of California declare their purpose and intent in enacting the CASE Act to be as follows:  [¶]  1.  To combat the crime of human trafficking and ensure just and effective punishment of people who promote or engage in the crime of human trafficking.  [¶]  2.  To recognize trafficked individuals as victims and not criminals, and to protect the rights of trafficked victims."  (Ballot Pamp., Gen. Elec. (Nov. 6, 2012) text of Prop. 35 at <http://vig.cdn.sos.ca.gov/2012/general/pdf/text-proposed-laws-v2.pdf#nameddest=prop35>.)  The CASE Act made various changes to state law regarding human trafficking, including expanding the definition of the offense and increasing the punishment for such offenses.  (*Id.*, Analysis of Prop. 35 at <http://voterguide.sos.ca.gov/propositions/35/analysis.htm>.)  As here relevant, the crime of "human trafficking" applies to "[a]ny person who causes, induces, or persuades, or attempts to cause, induce, or persuade, a person who is a minor at the time of commission of the offense to engage in a commercial sex act, with the intent to effect or maintain a violation of [various listed sexual crimes]."  (Pen. Code, § 236.1, subd. (c).)  "Commercial sex act" is defined as "sexual conduct on account of which anything of value is given or received by any person."  (*Id.,* subd. (h)(2).)

The sole provision of the CASE Act at issue here is Evidence Code section 1161, which provides as follows:  "(a)  Evidence that a victim of human trafficking, as defined in Section 236.1 of the Penal Code, has engaged in any commercial sexual act as a result of being a victim of human trafficking is inadmissible to prove the victim's criminal liability for the commercial sexual act.  [¶]  (b)  Evidence of sexual history or history of any commercial sexual act of a

8

victim of human trafficking, as defined in Section 236.1 of the Penal Code, is inadmissible to attack the credibility or impeach the character of the victim in any civil or criminal proceeding."

Based on Evidence Code section 1161, subdivision (a), appellant contends that because she presented evidence that she was a minor victim of human trafficking as defined in Penal Code section 236.1, the evidence that she solicited a commercial sex act with Officer Morales was inadmissible to prove that her conduct was criminal and subjected her to the jurisdiction of the juvenile court. Respondent raises a number of arguments in reply: (1) a juvenile delinquency proceeding is not a criminal proceeding; (2) Evidence Code section 1161 applies only to a prosecution for human trafficking; (3) appellant did not engage in a commercial sexual act because she only solicited to engage in such an act; and (4) appellant failed to present sufficient evidence that she was a victim of human trafficking.

We need not address the bulk of respondent's arguments regarding the interpretation of the statute because we find one point dispositive. If accepted, appellant's interpretation of Evidence Code section 1161, subdivision (a), would provide victims of human trafficking with a blanket immunity for the commission of commercial sexual acts, regardless of whether there was any specific causal connection between their victim status and the particular commercial sex act at issue. The plain language of the relevant provisions of the CASE Act defeats such an interpretation. (See *People v. Birkett* (1999) 21 Cal.4th 226, 231 ["We must follow the statute's plain meaning, if such appears, unless doing so would lead to absurd results the Legislature could not have intended"].)

Evidence Code section 1161, subdivision (a), applies only to "[e]vidence that a victim of human trafficking, as defined in [Penal Code Section 236.1], has

9

engaged in any commercial sexual act *as a result of* being a victim of human trafficking." (Evid. Code, § 1161, subd. (a), italics added.) The italicized language -- "as a result of" -- clearly requires a specific causal connection between the victim's status as a victim and the commercial sex act at issue. Unless the evidence relates to a commercial sex act that the victim committed "as a result of being a victim of human trafficking," Evidence Code section 1161 does not apply. The causal relationship between the victim's status as a victim of human trafficking and the particular commercial sex act at issue makes perfect sense, given that by definition (as here relevant), the victim must have been "cause[d], induce[d], or persuade[d] . . . to engage in a commercial sexual act" by another person. (Pen. Code, § 236.1, subd. (c).) Thus, when Evidence Code section 1161 refers to commercial sex acts committed "as a result of being a victim of human trafficking," it contemplates the act or acts that makes the victim a victim of human trafficking in the first place – the act or acts the victim has been "cause[d], induce[d], or persuade[d] . . . to engage in" (Pen. Code, § 236.1, subd. (c)).

In short, the plain meaning of Evidence Code section 1161, subdivision (a), shows that it applies only when there is a specific causal connection between the victim's status as a victim of human trafficking and the particular commercial sex act at issue. Here, the juvenile court found that when appellant solicited prostitution, she was acting as "an independent contractor" because she was not working for a pimp or giving a pimp the money she earned at the time. This finding is supported by the evidence and dispenses with application of Evidence Code section 1161.

"We review the trial court's findings to determine whether there is substantial evidence in the record that supports the findings. We do not reweigh the evidence, evaluate the credibility of witnesses or resolve evidentiary conflicts."

10

(*In re Jordan R.* (2012) 205 Cal.App.4th 111, 135; see also *T.W. v. Superior Court* (2012) 203 Cal.App.4th 30, 47 ["We defer to the juvenile court's findings of fact and assessment of the credibility of witnesses."].) "[W]e may not substitute our deductions for those of the trier of fact. [Citations.]" (*In re Albert T.* (2006) 144 Cal.App.4th 207, 216.)

Appellant testified that she was not working for a pimp at the time of the incident. She explained that the reason she approached Officer Morales was that she "could do whatever he wanted really quick and then have money in [her] pocket because [she] didn't have any money." She agreed that no one forced her to get into the car and that she would get to keep the money she made because she did not have a pimp at the time. The evidence thus supports the conclusion that appellant did not solicit prostitution in this instance "*as a result of* being a victim of human trafficking." (Evid. Code, § 1161, subd. (a), italics added.) The juvenile court accordingly did not err in denying appellant's motion to exclude evidence pursuant to the statute.

//

//

//

//

//

//

//

//

//

//

**DISPOSITION**

The judgment is affirmed.

**CERTIFIED FOR PUBLICATION**

WILLHITE, J.

We concur:

EPSTEIN, P. J.

MANELLA, J.

12