Filed 11/2/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re N.C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>N.C.,<br><br>     Defendant and Appellant. | A146637<br><br>(Los Angeles County Super. Ct. No. PJ51576)<br><br>(Contra Costa County Super. Ct. No. J1500733) |

The Californians Against Sexual Exploitation Act (CASE Act), enacted by the voters of the state as Proposition 35 at the general election on November 6, 2012,[1] increased penalties for human trafficking, authorized the collection of fines to be used for victim services and law enforcement, required persons convicted of trafficking to register as sex offenders, and required such offenders to provide information regarding Internet access and identities they use in online activities. The CASE Act also added section 1161 to the Evidence Code (section 1161). Subdivision (a) of that statute, which as we later explain, was amended by the Legislature in 2013,[2] now declares that evidence that a victim of human trafficking "has engaged in any commercial sexual act as a result of

---

[1] Proposition 35 added section 1161 to the Evidence Code, amended Penal Code sections 236.1, 236.2, 236.4, 290, 290.12, 290.14, and 290.15; added section 290.024 to the Penal Code, and amended section 13159.14 of that Code.

[2] Proposition 35 provided, in section 15, that the CASE Act "may be amended by a statute in furtherance of its objectives passed in each house of the Legislature by rollcall vote entered in the journal, a majority of the membership of each house concurring." (Voter Information Pamp., Gen. Elec. (Nov. 6, 2012) p. 105.)

1

being a victim of human trafficking is inadmissible to prove the victim's criminal liability for the commercial sexual act."

Appellant, a 17-year-old victim of human trafficking, was charged with prostitution under Penal Code section 647, subdivision (b), which provides that every person who "solicits or who agrees to engage in or who engages in any act of prostitution [is guilty of disorderly conduct]. A person agrees to engage in an act of prostitution when, with specific intent to so engage, he or she manifests an acceptance of an offer or solicitation to so engage, regardless of whether the offer or solicitation was made by a person who also possessed the specific intent to engage in prostitution. No agreement to engage in an act of prostitution shall constitute a violation of this subdivision unless some act, in addition to the agreement, is done within this state in furtherance of the commission of an act of prostitution by the person agreeing to engage in that act."[3]

At the commencement of the jurisdictional hearing, appellant moved under section 1161 to exclude all evidence sought to be introduced by the district attorney to show that she solicited acts of prostitution in violation of Penal Code section 647, subdivision (b). The district attorney opposed the motion on the ground that evidence is inadmissible under section 1161 only when offered to prove that a victim of human trafficking is criminally liable for a "commercial sexual act," and the offense described by subdivision (b) of Penal Code section 647 is not such an act. According to the district attorney, the phrase "commercial sexual act" in section 1161 is defined by section 236.1, subdivision (h)(2) of the Penal Code, which states that a "commercial sex act" means "sexual conduct on account of which anything of value is given or received by any person." As the district attorney emphasized, Penal Code section 647, subdivision (b) does not require, and appellant was not given and did not receive, anything of value as a result of her commission of that offense.

---

[3] The nature of acts that may be deemed in furtherance of an agreement to engage in an act of prostitution, which may be verbal, are described in *Kim v. Superior Court* (2006) 136 Cal.App.4th 937, 941-945 (*Kim*).

2

Accepting that argument, and also because it believed section 1161 inapplicable in juvenile proceedings, the trial court denied appellant's motion to exclude.

Finding that section 1161 does apply in juvenile proceedings, and that the trial court's acceptance of the prosecutor's interpretation of that statute would virtually wipe out a significant protection afforded victims of human trafficking by the CASE Act, we shall reverse the judgment.

## FACTS AND PROCEEDINGS BELOW

On May 28, 2015,[4] the Los Angeles County District Attorney filed a wardship petition (Welf. & Inst. Code, § 602) in case No. PJ51576A (Petition A), alleging that on May 12, appellant, age 17, committed misdemeanor disorderly conduct by soliciting or agreeing to engage in prostitution in violation of Penal Code section 647, subdivision (b), and was therefore subject to the jurisdiction of the juvenile court pursuant to section 602 of the Welfare and Institutions Code. That same day, the district attorney filed a second petition in case No. PJ51576B (Petition B), alleging that appellant committed the same offense on May 27.[5]

On June 10, appellant moved under section 1161 to exclude all evidence the district attorney planned to introduce to prove she engaged in commercial sexual acts, because she was a "victim of human trafficking," who had been coerced into performing those acts by a pimp who was a human trafficker within the meaning of Penal Code section 236.1, subdivision (c), which defines and criminalizes sex trafficking.[6] The

---

[4] All dates are in the year 2015.

[5] As we later explain, Penal Code section 647, subdivision (b), was amended by the Legislature during its current session, so that on January 1, 2017, when the amendment becomes effective, the present provisions of subdivision (b) no longer apply "to a child under 18 years of age who is alleged to have engaged in conduct . . . that would, if committed by an adult, violate the subdivision."

[6] Penal Code section 236.1, subdivision (c) provides that "[a]ny person who causes, induces, or persuades, or attempts to cause, induce, or persuade a person who is a minor at the time of commission of the offense to engage in a commercial sex act, with the intent to effect or maintain a violation of [specified statutes] is guilty of human trafficking."

3

motion also claimed that, since the evidence sought to be excluded consisted solely of the testimony of two undercover police officers regarding the alleged acts of commercial sex, the petitions should be dismissed after the exclusion of the officers' testimony.

Before the presentation of evidence, the district attorney argued that the exclusion of evidence authorized by section 1161 did not apply to appellant because it only applies to evidence offered to prove the commission of a "commercial sexual act," and neither petition alleged she had engaged in any such act. The acts with which appellant was charged, the district attorney emphasized, were not committed in return for "anything of value given or received by any person," as required by the definition of "commercial sex act" set forth in Penal Code section 236.1, subdivision (h)(2), which, like Evidence Code section 1161, is also a part of the CASE Act. As an offer of proof, the district attorney represented that neither of the officers who would testify "are going to testify that any sexual act was ever committed."

The trial court elected to defer ruling on that issue, and proceed with an evidentiary hearing, because it felt it appropriate to "make a record" with respect to two threshold legal questions: (1) whether section 1161 applies only in criminal cases and not in juvenile proceedings,[7] and (2) whether, even if it does apply in juvenile proceedings, it is inapplicable in this case because, as the district attorney claimed, no evidence shows that appellant engaged in a "commercial sex act" as defined in Penal Code section 236.1, subdivision (h)(2), as meaning "sexual conduct on account of which anything of value is

_____

[7] This issue was raised not by the district attorney, who disassociated himself from it, but sua sponte by the court. The Attorney General stated in her brief that "we are in agreement with appellant that section 1161 applies to minors who have engaged in a commercial sexual act as a result of being a victim of human trafficking *and who provide testimony against individuals charged with the crime of human trafficking*." (Italics added.) The record does not show appellant provided or was willing to provide testimony against her pimp, and indicates she did not. In any case, the Attorney General provided no authority for the proposition that the exclusion authorized by section 1161, subdivision (a), is available only to victims of human trafficking who testify against an alleged human trafficker, which was not asserted below by the district attorney, and we are not aware of any authority for that proposition.

given or received by any person." The trial court explained that no matter which way it ruled on these issues it was confident there would be an appeal and, "given the lack of clear direction at the moment," it was important "that we develop as full a record as possible. So . . . my inclination is to let the defense proceed with whatever showing it wants to make, and I'll simply rule at some point after we put this on."

The court heard the testimony of the two undercover police officers and also that of Nadeah Vali, an expert on human trafficking appointed by the court.

Undercover Los Angeles Police Officer Peter Ruiz, who testified with respect to the facts alleged in Petition A, stated that on May 12, while a member of a task force monitoring prostitution near the intersection of Sepulveda Boulevard and Nordhoff Street "known for prostitution," he approached appellant, who appeared to be in her early 20's, she told him to meet her around the corner, which he did, and she then entered his unmarked car. After a discussion in which appellant and Ruiz discussed various types of sexual acts and the price Ruiz would have to pay for each act or combination of acts, appellant agreed to engage in "sex and a blowjob" for $60. Appellant told Officer Ruiz she had a room in a hotel at Sepulveda and Tupper Street and told him to drive there. When they arrived at the hotel's parking lot, appellant was arrested by other members of the task force. The police contacted appellant's mother, who lived in Antioch in Contra Costa County, and appellant was released to her the day after she was arrested.

Undercover Los Angeles Police Officer Marcos Gutierrez, a member of an undercover task force monitoring prostitution near the intersection of Sepulveda and Wyandotte Streets in Los Angeles, testified regarding the allegations of Petition B. He stated that on May 27, while he was posing as a "John," appellant looked in his direction, walked over to the open window on the passenger side of his unmarked car, and stated that "she was only doing blow jobs" that night. He said "O.K.," asked how much that would cost, and was told $40. Gutierrez drove the two of them to a location he and other officers had previously decided upon, and appellant was immediately arrested by other members of the task force. After her arrest, appellant refused to say whether she had a

5

pimp or to otherwise cooperate.  After she refused to telephone her mother, appellant was detained in juvenile hall.

Nadeah Vali, a court appointed expert on human and sexual trafficking, was asked to assess whether appellant was a "victim of human trafficking" within the meaning of section 1161.  After interviewing appellant and familiarizing herself with police reports regarding appellant's present and prior arrests, and the probation reports relating to her detention and pre-plea hearings, Vali concluded that appellant had been exploited by two pimps, one known only as Victor, who had previously coerced her into engaging in prostitution in Oakland, and another known only as Michael, who later exploited her that same way in Los Angeles at the time she was arrested by Officers Ruiz and Gutierrez.  In Vali's opinion, appellant "exhibit[ed] the indicators of being a victim of human trafficking," in that she exhibited "severe trauma" at the hands of "a third party exploiter" who controlled her choices and actions, abused her, transported her to and from certain locations, "coerced her into engaging in sexual acts, and confiscated the money she earned as a result of those acts. [8]  Vali's testimony established, and it is undisputed, that appellant committed the acts with which she was charged "as a result of being a victim of human trafficking."  (§ 1161, subd. (a).)

Although, without objection from the district attorney, the court found appellant to have committed the charged acts "as a result of being a victim of human trafficking," it nevertheless denied her motion to exclude evidence after concluding that, as matters of

---

[8] Vali testified that Victor, who exploited appellant when she was in Oakland, "essentially kidnapped [appellant] while she was on the streets; then physically abused her on a daily basis and forced her to engage in certain . . . in commercial sex.  He posted ads that advertised for services online on websites . . . .  [¶] . . . [¶]  And he had a quota of $600 a night that he forced her to turn over.  He also set prices.  And he also abused her if she did not meet that quota . . . ."

Vali testified much the same about Michael, who exploited appellant in Los Angeles at the time of the acts described in the petitions in this case.  "She's on the streets, needed a place to stay.  He took her to a motel where she was confined.  He transported her as well to and from the track.  He also coerced her to engage in commercial sex and set prices and also took the money that she earned."

6

law, section 1161 does not apply in juvenile proceedings and, even if it did, section 1161 does not apply to cases such as this, in which the victim of human trafficking did not actually engage in "sexual conduct on account of which anything of value is given or received by any person."  (Pen. Code, § 236, subd. (h)(2).)

On July 15, appellant timely filed a notice of appeal in the Los Angeles County Superior Court from the order finding true the allegations of the delinquency petitions.

On June 24, after the Los Angeles County Department of Social Services declined to accept appellant as a client because her family resided in Northern California, the court ordered the matter transferred to Contra Costa County for disposition.[9]

On November 2, the California Supreme Court ordered the notice of appeal filed by appellant in the Second Appellate District transferred to this court.

The appeal is from the orders of the Los Angeles County Juvenile Court on June 16 and 24, sustaining the allegations of Petitions A and B that appellant committed the offenses of soliciting, engaging, or agreeing to engage, in prostitution, in violation of Penal Code section 647, subdivision (b), a misdemeanor, and adjudging her a ward of the court pursuant to Welfare and Institutions Code section 602.  The appeal, which is authorized by section 800 of the Welfare and Institutions Code, was timely filed on July 15, 2015.

**DISCUSSION**

_____

[9] After accepting the transfer on August 12, the Contra Costa County Juvenile Court ordered the probation department and a social service agency to evaluate appellant and determine whether she should be adjudicated a dependent child or a delinquent.  A committee of eight persons representing the probation department and various social service agencies recommended appellant be adjudged a delinquent ward.  Accepting the recommendation, the court adjudged appellant a ward of the court under Welfare and Institutions Code section 602, committed her to the care and custody of the probation department, and ordered her placement at a group home for the regular six-month program.  The dispositional orders of the Contra Costa County Superior Court are not before us.  As earlier indicated, the appeal was filed before the matter was transferred by the Supreme Court to this court on October 28.

7

# I.

## *Section 1161 Applies in Juvenile Proceedings*

The trial court noted that several judicial opinions "touch upon" the issue of whether section 1161 applies in delinquency proceedings, citing *In re M.D.* (2014) 231 Cal.App.4th 993, *In re Aarica S.* (2014) 223 Cal.App.4th 1480, and *In re M.V.* (2014) 225 Cal.App.4th 1495, but felt none actually addressed the purely legal issue. "They simply discuss it and suggest that it's an issue for another day." Observing that "[t]his may well be that other day," the court stated that "since I'm ruling that [section] 1161 does not apply to delinquency proceedings, it's important for me to let the Court of Appeal know why I'm thinking that." The court explained its thoughts as follows:

"As delinquency judges and advocates, our responsibility is not to punish a person who commits a crime. It is, rather, to rehabilitate and protect those who are under the age of 18 from the consequences of their conduct and perhaps get them to a position where they become law-abiding citizens in a way that does not leave them with an enduring or lasting criminal record.

"I think it's great that [appellant's] grandparents are willing to take care of her in these uncertain and difficult times, but as a judge who has observed [appellant's] history, my biggest concern, and it's a concern in all these sorts of cases, is that without court supervision, without becoming either a 300 or 602 ward, there is no incentive for her to follow through. She has not yet reached the maturity level that would satisfy any reasonable judge in believing that she might not run." Believing appellant lacks "real adult supervision," the court stated that "the bottom line is, without some kind of jurisdiction over the minor, this minor is in serious danger of, well, falling by the wayside, whether she runs away, whether she re-engages with one of the pimps that have been testified about. There is no way for a juvenile judge to protect a minor like this without a declaration of wardship, without gaining jurisdiction over the minor."

Moving on to the text of section 1161, the trial judge placed great weight on the fact that the "[e]vidence that a victim of human trafficking . . . has engaged in any commercial sexual act" which is excluded by the statute is that which "prove[s] the

8

victim's *criminal* liability." (Italics added.) As the court stated, "I think it's absolutely vital for me and the Court of Appeal to consider that word 'criminal.' The court emphasized that "if the Legislature had decided that [section 1161] should apply to delinquency proceedings, they could have clearly stated that." The court acknowledged the many similarities between the juvenile justice system and the criminal justice system, but it was also "mindful of the fact that there are significant differences, and one of the most important differences is that we adhere to protect [a juvenile] from herself, so to speak in times of trouble. [¶] And so in an effort to prevent [appellant] from becoming essentially a revolving door where she gets off the bus at someplace between here and home and reconnects with a pimp, it's important for me to adopt the position that [section 1161] can't absolve her from a declaration of wardship."

The trial court found section 1161 inapplicable in juvenile proceedings because the evidence inadmissible under the statute is only that offered to prove "criminal liability" and, as declared in Welfare and Institutions Code section 203, "[a]n order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding."

The trial court's determination is clearly unsustainable.

To begin with, Welfare and Institutions Code section 701 provides that at a hearing to determine whether a minor is a person described by sections 300, 601, or 602, "[t]he admission and exclusion of evidence shall be pursuant to the rules of evidence established by the Evidence Code and by judicial decision." Finding section 1161 inapplicable to juvenile proceedings because it refers to "criminal liability" also ignores the reasoning of *In re Winship* (1970) 397 U.S. 358 as to why the "civil labels" employed in delinquency proceedings, and the rehabilitative goals of the juvenile law, provide no basis upon which to deprive minors of protections analogous to those conferred by the CASE Act, which would deny them a meaningful opportunity to present a complete defense.

9

Finally, one of the chief purposes of the CASE Act is to protect minors, as the crime of "human trafficking" is specifically made applicable to "[a]ny person who causes, induces, or persuades, or attempts to cause, induce, or persuade, a person who is a minor at the time of commission of the offense to engage in a commercial sex act with the intent to effect or maintain a violation of [various specified sexual crimes]." (Pen. Code, § 236.1, subd. (c).) Given the extraordinary number of minors trafficked for sexual purposes (see *In re M.D., supra*, 231 Cal.App.4th at p. 999; Office of the Attorney General, Cal. Dept. of Justice, The State of Human Trafficking in California (2012) at pp. 22-26, 48-56 (State of Human Trafficking) and the policy of the CASE Act to treat these minors as victims, not criminals (*In re Aarica S., supra,* 223 Cal.App.4th at p. 1486), the inapplicability of section 1161 in juvenile proceedings would obstruct one of the chief purposes of the CASE Act: acknowledgment that minors sexually exploited by human traffickers are not criminals or delinquents, but victims.

In any case, the question whether section 1161 applies in juvenile proceedings charging minors with commercial sexual acts will soon become academic. On September 26, 2016, the Governor approved and filed with the Secretary of State, Senate Bill No. 1322 (Mitchell), which amends Penal Code section 647, subdivision (b). As earlier noted, after January 1, 2017, present section 647 will "not apply to a child under 18 years of age who is alleged to have engaged in conduct to receive money or other consideration that would, if committed by an adult, violate the offense now described in subdivision (b). (Sen. Bill No. 1322 ( 2015-2016 Reg. Sess.) ch. 654, § 1.) Senate Bill No. 1322 also amends Penal Code section 653.22, which makes it a crime to loiter in any public place with the intent to commit prostitution, so that it too will no longer be applicable to minors. The amendments to Penal Code sections 647, subdivision (b) and 653.22— which are commonly referred to as "the prostitution statutes" (*In re M.V., supra*, 225 Cal.App.4th at p. 1524)—mean that juveniles whose conduct would be unlawful under those statutes if engaged in by an adult will no longer be prosecuted. In other words, after January 1, 2017, when the amendments become effective, section 1161 will relate only to criminal proceedings in which an adult charged with one or more "commercial

sexual acts" maintains those acts were the "result of being a victim of human trafficking."[10]

## II.

### *Admitting Evidence of Conduct Punishable Under Penal Code Section 647, Subdivision (b), in Prosecutions of Victims of Human Trafficking for Sexual Acts Coerced by a Trafficker Would Deny Such Victims Protection Clearly Intended by the CASE Act and be Absurd*

The Attorney General agrees appellant committed the charged offenses "as a result of being a victim of human trafficking," but claimed in her brief that this case is not within the ambit of section 1161 because, as the trial court agreed, appellant was not charged with a "commercial sexual act," as defined by Penal Code section 236.1; that is, appellant was charged with an offense that does not require sexual conduct in return for money or anything else of value. (*People v. Mecano* (2013) 214 Cal.App.4th 1061, 1070.)

The issue before us is whether the "commercial sexual act" referred to in section 1161 is the same as the "commercial sex act" defined in Penal Code section 236.1, subdivision (h)(2), or, as appellant maintains, "commercial sexual act" must be read more expansively so as to include uncompensated sexual conduct punishable under Penal Code section 647, subdivision (b). As previously indicated, this issue, which is one of first impression,[11] will soon be presented only in prosecutions in criminal proceedings against

---

[10] Because section 1161 will remain applicable to adult prosecutions for prostitution in violation of Penal Code sections 647, subdivision (b), and 653.22, subdivision (a), the parties have indicated their belief it is appropriate for us to certify this opinion for publication, in order to clarify that section 1161 protects adult victims of human trafficking by excluding evidence offered to prove their criminal liability for conduct proscribed by those prostitution statutes.

[11] The only extant opinion that even adverts to the issue is *In re Aarica S., supra*, 223 Cal.App.4th at page 1486, a case in which the juvenile defendant was unable to show that her commercial sex act was the result of being a victim of human trafficking. After describing the purpose and intent of the voter who passed Proposition 35 and enacted the CASE Act, and quoting the statutory definition of the crime of "human trafficking" as causing or inducing, or persuading a minor to engage in a "commercial sex act" with the

11

an adult claiming he or she engaged in the charged commercial sexual acts "as a result of being a victim of human trafficking."

We review matters of statutory interpretation de novo. (*Carver v. Chevron, U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142.) Where the issue involves the proper interpretation of a statute and its application to undisputed facts our review is independent. (*Smith v. Rae-Venter Law Group* (2002) 29 Cal.4th 345, 357.) "Initially, '[a]s in any case of statutory interpretation, our task is to determine afresh the intent of the Legislature by construing in context the language of the statute.' [Citation.] In determining such intent, we begin with the language of the statute itself. [Citation.] That is, we look first to the words the Legislature used, giving them their usual and ordinary meaning. [Citation.] 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." ' [Citation.] 'But when the statutory language is ambiguous, "the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes." ' " (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 192-193.)

As later described (see discussion, *post*, at p. 19, fn. 15), after the close of briefing, we determined that the legislative history of the 2013 amendment of section 1161, which was neither included in the record before us nor described in the briefs, was a matter of substantial consequence to the determination of this appeal. Accordingly, as required by Evidence Code section 459, subdivision (d), we provided that history to the parties, indicated our intention to take judicial notice of this information, and afforded the parties the opportunity to meet such information before judicial notice of the matter was taken. Less than a week later, on the day before oral argument, the Attorney General advised the

intent to effect a violation of specified sex crimes (Pen. Code, § 236.1, subd. (c)), the court observed that " '[c]ommercial sex act' is defined as 'sexual conduct on account of which anything of value is given or received by any person,' " citing subdivision (h)(2) of Penal Code section 236.1. (*In re Aarica S.*, at p. 1486.) The meaning of the phrase "commercial sex act" was not at issue in *Aarica S.*, and the court's gratuitous observation was merely in passing.

12

clerk of this court that, after belatedly considering the reasoning of *People v. Casas* (1986) 181 Cal.App.3d 889 (*Casas*), she desired to withdraw the argument in her brief that the phrase "commercial sexual conduct" did not embody the unlawful conduct proscribed by subdivision (b) of Penal Code section 647. The Attorney General essentially acknowledges that the contrary determination of the trial court constituted reversible error.

*Casas* involved Evidence Code sections 782 and 1103, which limit the admissibility of evidence of "sexual conduct" of the complaining witness when offered to attack the credibility of that witness, because such use of that evidence would deter rape victims from filing complaints. The trial court in *Casas* relied on these statutes to exclude evidence that the victim had offered a friend of the defendant sex for money shortly before the defendant appeared in the victim's room. (*Casas*, *supra*, 181 Cal.App.3d at pp. 894-895.) The Court of Appeal found no abuse of discretion because the victim's statement reflected her "willingness to engage in sexual intercourse," which constituted "sexual conduct" and therefore fell within the ambit of Evidence Code sections 782 and 1103. (*Casas*, at p. 895.)

We agree that *Casas* calls for a more expansive interpretation of the phrase "commercial sexual act" than the construction adopted by the trial court. The phrase contemplates "the practice or occupation of engaging in sexual activity with someone for payment," which is the Oxford English Dictionary definition of "prostitution." Prostitution invariably commences, as it did in this case, with a discussion between the parties of the sexual activity or activities offered by one party and at what cost to the other party, an agreement as to the act and reciprocal payment, and conduct indicating a specific intention to perform the agreement. Because this preludial conduct criminalized by Penal Code section 647, subdivision (b), has both a commercial and a sexual aspect it may reasonably be thought to constitute a "commercial sexual act," or at least an element of such an act, despite the fact that nothing of value has yet been given or received by any person as compensation for that sexual conduct. However, the reasoning of *Casas* is hardly the only justification for concluding that the phrase "commercial sexual act" is

13

ambiguous and amenable to interpretation, and that the mere act of soliciting prostitution may properly be considered a "commercial sexual act" despite the absence of a completed and compensated sexual act.

Although Evidence Code section 1161 refers to Penal Code section 236.1, the syntax of the single sentence that comprises subdivision (a) of section 1161 indicates that the reference to Penal Code section 236.1 is solely to its definition of "human trafficking" in subdivisions (a), (b), and (c) of that statute;[12] not to its definition in subdivision (h)(2) of "commercial sex act." The distinction appears purposeful. The definition of "commercial sex act" in subdivision (h)(2) of section 236.1 tracks the definition of that term in the federal Trafficking Victims Protection Act (22 U.S.C. § 7101 et seq.; see especially § 7102(3).) However, although the definition of *human trafficking* in Penal Code section 236.1 "is equivalent to the federal definition of a severe form of trafficking found in [the federal trafficking act]" (Pen. Code, § 236.1, subd. (g), referring to 22 U.S.C. § 7102(8)), the federal act provides no benefit to victims of human trafficking comparable to that authorized by section 1161. There was therefore no reason for our Legislature to adopt language from the federal act in section 1161, a novel provision of state law having no counterpart in the federal act.

We recognize that section 1161 and Penal Code section 236.1, subdivision (h)(2), are both provisions of the CASE Act, and the latter statute defines language very similar to that used in the former. As has been said, "identical language appearing in separate statutory provisions should receive the same interpretation when the statutes cover the same or analogous subject matter." (*People v. Cornett* (2012) 53 Cal.4th 1261, 1269, fn. 6; *People v. Lamas* (2007) 42 Cal.4th 516, 525.) But the phrase "commercial sexual

_____

[12] Subdivision (a) defines labor trafficking, subdivision (b) defines deprivations of the liberty of another with the intent to effect a violation of specified statutes (relating to pimping, pandering, the possession, sale, advertising, and distribution of obscene materials, the exploitation of minors in certain sexual contexts, and extortion) as a form of human trafficking, and subdivision (c) defines inducing or attempting to induce a minor to engage in a commercial sex act with the intent to effect a violation of the same statutes specified in subdivision (b).

14

act" in section 1161 is *not* "identical" to the phrase "commercial sex act" in Penal Code section 236.1, subdivision (h)(2) and, more importantly, the two statutes do not specifically relate to the same or analogous subject matter. Penal Code section 236.1 defines the nature and punishment of various forms of human trafficking, while section 1161 pertains to the exclusion of evidence in certain prosecutions of a *victim* of human trafficking.

For the foregoing reasons, we conclude that, as used in section 1161, the phrase "commercial sexual act" is, at the very least, ambiguous. Where statutory language is ambiguous and susceptible to more than one reasonable interpretation " 'we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]' [¶] Furthermore, we must select a construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences. [Citation.]" (*Kim*, *supra*, 136 Cal.App.4th at p. 941.)

The most helpful extrinsic aids are the legislative history of the 2013 amendment of section 1161, and the absurd consequences that would follow from the interpretation adopted by the trial court. The legislative history clearly shows the measure was intended to apply to acts of prostitution that resulted from "being a victim of human trafficking" even if the sexual conduct was not "on account of which anything of value is given or received by any person." (Pen. Code, § 236.1, subd. (h)(2).) The interpretation of section 1161 embraced by the trial court therefore cannot be reconciled with the apparent intent of the Legislature.

The original version of section 1161 enacted by passage of Proposition 35 provided that "[e]vidence that a victim of human trafficking . . . has engaged in any commercial sexual act as a result of being a victim of human trafficking is inadmissible to prove the victim's criminal liability for *any conduct related to that activity*." (Italics added.) In 2013, the Legislature amended the statute by replacing the italicized words

15

with "*the commercial sexual act*," so that subdivision (a) of section 1161 will read: "Evidence that a victim of human trafficking, as defined in Section 236.1 of the Penal Code, has engaged in any commercial sexual act as a result of being a victim of human trafficking is inadmissible to prove the victim's criminal liability *for the commercial sexual act*." (Italics added.)

Assemblyman Richard Bloom, the author of the amending measure, Assembly Bill No. 694 (AB 694), explained its purpose to the Assembly and Senate Committees on Public Safety and his views were reiterated in committee analyses of the measure made available to all members of the Legislature as follows: "Language from Proposition 35 excludes evidence that a victim of human trafficking took part in a commercial sexual act, such as prostitution, in prosecutions related to that activity. However, the language as it reads now could reach beyond its intended use and potentially jeopardize other serious prosecutions, such as robbery or murder of the human trafficker, where that evidence may be key in establishing motive. By narrowing this section to apply only to prosecutions for the commercial sexual act, AB 694 makes a simple change that insures that Proposition 35 still protects victims of human trafficking but allows for this type of evidence to be used in other prosecutions." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 694 (2013-2014 Reg. Sess.) p. 3 (Analysis).) Assemblyman Bloom thus made clear that (1) prostitution is "a commercial sexual act," (2) the voters who enacted Proposition 35 intended that section 1161 apply in prosecutions of victims of human trafficking for "prostitution," and (3) AB 694 did not alter that application.[13]

So did Los Angeles County District Attorney Jackie Lacey, the proponent of the amendment and, so far as the record shows, the only non-legislative source of information regarding AB 694 received by the legislative committees that analyzed the measure and placed it on consent calendars made available to all state legislators. In identical letters to the Chairpersons and members of the Assembly and Senate Public

---

[13] Assembly Bill No. 694 was introduced, enrolled and chaptered without any amendments in merely six months.

16

Safety Committees dated, respectively, March 16 and June 3, 2013, and included in the legislative bill analyses, Lacey stated that the original language of subdivision (a) of section 1161 " 'creates potential problems for the prosecution if a victim of human trafficking is being prosecuted for a crime other than a commercial sexual act related to human trafficking. For instance, if a defendant was a victim of human trafficking and murdered his or her pimp, the statute as currently enacted could be interpreted to make inadmissible evidence that the defendant was a prostitute and the that murder victim was the defendant's pimp, thereby excluding important evidence connecting the defendant and murder victim and potential evidence of motive for the murder.' " (Analysis at p 6.)

Lacey acknowledged that " '[c]learly, in a prosecution of a victim of human trafficking for an act of prostitution that is a product of the trafficking, [the initial version of] Evidence Code section 1161[, subdivision] (a), makes any evidence of a commercial sexual act related to that trafficking inadmissible.' " (Analysis at p. 6.) She then explained that the amendment proposed by AB 694 "would clarify" that, as expressed in the Official Voter Information Guide regarding Proposition 35, " 'the limitation on the admissibility of evidence that a victim of human trafficking engaged in any commercial sexual act, is intended to limit such evidence when being introduced to prosecute that person for a commercial sexual act crime, *such as prostitution*.' " (Analysis at p. 7, italics added.)

As reflected in the bill analyses, the District Attorney also told the chairpersons of the policy committees that " '[p]rior to proposing AB 694, our office met with Chris Kelly, the proponent of the CASE Act, who informed us that the intent of Evidence Code section 1161[, subdivision] (a) was to limit the prosecutions of the sexual act (*i.e., prostitution*), and that he supports our legislation that clarifies the intent of Proposition 35.' " (Analysis at p. 7, italics added.)

In short, as set forth in the bill analyses, the representation to the Legislature of the Los Angeles County District Attorney reiterated that prostitution is a "commercial sexual act." The Legislature was therefore assured by the author of the bill and by its proponent that the 2013 amendment, which was unopposed, would continue to protect victims of

17

human trafficking by excluding evidence of commercial sexual acts they were coerced by human traffickers to perform when prosecuted by the state for those criminal acts, most specifically prostitution, the criminal act for which victims of human sex trafficking are most commonly prosecuted.  (State of Human Trafficking, *supra*, at pp. 50-57; see *Kim*, *supra*, 136 Cal.App.4th at p. 941 [courts may look to legislative history to discern meaning of statutory language].)

It is not entirely clear why legislative attention was never called to the possibility the phrase "commercial sexual act" in section 1161 might be seen as having the same meaning as that ascribed to the phrase "commercial sex act" by Penal Code section 236.1 which, as we have explained, would render section 1161 largely meaningless.  But whatever the reason, the legislative history reflects no legislative intention to render section 1161 inapplicable to the prosecution of a person for an act of prostitution, including the solicitation of prostitution, that resulted from "being a victim of human trafficking."  On the contrary, as the Los Angeles County District Attorney stated in her letter to legislators, AB 694 was designed to "clarify" that the exclusion of evidence authorized by section 1161, subdivision (a), is limited to evidence introduced to prosecute a victim of human trafficking "for a commercial sexual crime, such as prostitution," and the measure was therefore consonant with the purpose of Proposition 35 and the CASE Act.

The trial court's interpretation of section 1161 would not only defeat the general purpose of the CASE Act, but lead to absurd consequences.

Persons are rarely arrested for acts of prostitution "on account of which anything of value is given or received."  (Pen. Code, § 236.1, subd. (h)(2).)  Because law enforcement officers may not themselves engage in sex with suspected prostitutes, let alone compensate them with "anything of value" (*ibid.*), prostitution is in this state ordinarily punished "as a type of disorderly conduct" under Penal Code section 647, subdivision (b).  (Witkin & Epstein, Cal. Criminal Law (4th Ed.) Sex Offenses and Crimes Against Decency, § 76, p. 480.)  As explained in *Kim, supra,* 136 Cal.App.4th 937, the Legislature enacted Penal Code section 647, subdivision (b), in order " 'to give

18

police another enforcement tool' on 'prostitution laws that [were] difficult to enforce.' "
(*Kim*, at p. 942.)

As indicated, at the present time, almost all persons arrested for prostitution in this state are charged with violating either Penal Code sections 647, subdivision (b), as was appellant, or 653.22, subdivision (a),[14] which makes it unlawful for any person to loiter in any public place with the intent to commit prostitution.[15] However, neither of these so

---

[14] Subdivision (a) of Penal Code section 653.22 states that "It is unlawful for any person to loiter in any public place with the intent to commit prostitution. This intent is evidenced by acting in a manner and under circumstances which openly demonstrate the purpose of inducing, enticing, or soliciting prostitution, or procuring another to commit prostitution." Between 2007 and 2012 (through Sept. 30, 2012) 8,881 persons were convicted of this offense in California courts. (State of Human Trafficking, *supra*, at p. 57, Table 2.)

[15] The Special Enforcement Section of the Los Angeles Police Department, states that it "uses only 647 (B) for prostitution," and that between January 1, 2012, and August 6, 2016, it arrested 10,691 persons for prostitution under Penal Code section 647, subdivision (b). During that same period the department arrested 8,021 persons for loitering for purposes of prostitution in violation of Penal Code section 653.22. (Los Angeles Police Department, Special Enforcement Section, Detective Support and Vice Division, Reporting Generated on Aug. 6, 2016.)

The Los Angeles County Sheriff's Department reports that between January 1, 2011, and July 31, 2016, it made 5,541 "prostitution arrests" under Penal Code sections 647, subdivision (b) and 653.22. (L.A. County Sheriff's Dept. Prostitution Arrests by Penal Codes Jan. 1 – Dec. 31, 2011; Jan. 1 July 31, 2016.)

Statistics reported by the Los Angeles City Attorney show that between January 1, 2012, and December 31, 2016, officials prosecuted 10,065 cases in which count 1 was violation of Penal Code section 647, subdivision (b), of which 84.9 percent resulted in guilty pleas, 14.6 percent were dismissed, 0.25 percent resulted in a guilty verdict and 0 percent resulted in a verdict of not guilty. (Los Angeles City Attorney, Case Disposition Status Reports for ALL BRANCHES, Reporting Generated Aug. 15, 2016.)

Because the statistics and legislative history we have described and discussed were not a part of the record in this appeal or referred to by the parties in their briefs, we provided these materials to the parties, indicated we considered them matters which may be judicially noticed, and indicated our intention to take such notice. As required by Evidence Code section 459, subdivision (d), we also afforded each party a reasonable opportunity to meet such information, and the subject was discussed with counsel at oral argument. We hereby take judicial notice of the bill analyses of the Assembly and Senate

called "prostitution statutes" (see, e.g., *In re M.V., supra*, 225 Cal.App.4th at p. 1524), requires that "anything of value be given or received." (§ 236.1, subd. (h)(2).)[16] Therefore, if the interpretation of section 1161, subdivision (a), urged by the Los Angeles County District Attorney in this case and adopted by the trial court is correct, the CASE Act would provide no protection at all for victims of human trafficking prosecuted for acts of prostitution they were forced by traffickers to perform. Such a ridiculous result cannot, of course, be judicially countenanced.

Proposition 35 allowed that the CASE Act may be amended by the Legislature, but only by means of "*a statute in furtherance of its objectives.*" (Prop. 35, § 15.) Section 1161, as amended, is "in furtherance" of the objectives of the CASE Act only if the phrase "commercial sexual act" is construed so as to embrace the conduct punishable by subdivision (b) of Penal Code section 647. Accordingly, the trial court erred in denying appellant's motion to exclude evidence offered by the prosecution to prove her criminal liability for commission of that offense.

---

Committees on Public Safety, which include the text of the identical letters from Los Angeles County District Attorney Jackie Lacey dated March 16 and June 3, 2013, to the chairpersons and members of those committees (see *People v. Cruz* (1996) 13 Cal.4th 764, 780 [legislative staff analyses are subject to judicial notice]), and the statistical information reported by the offices of the Los Angeles County District Attorney, the Los Angeles City Attorney and the Los Angeles County Sheriff's Department and referred to in this opinion, which information is "not reasonably subject to dispute and [is] capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." (Evid. Code, § 452, subd. (h).)

[16] It is unclear whether persons are or may be prosecuted for prostitution under subdivision (a) of Penal Code section 647, which provides that every person "[w]ho solicits anyone to engage in or who engages in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view" is guilty of disorderly conduct, a misdemeanor. In any event, this offense also does not require the giving or receipt of anything of value, and is therefore also not within the definition of "commercial sex act" set forth in Penal Code section 236.1, subdivision (h)(2).

## DISPOSITION

The judgment is reversed.

_____
Kline, P.J.

We concur:

_____
Stewart, J.

_____
Miller, J.

*In re N.C.* (A146637)

21

Trial Court:                         Los Angeles County Superior Court
Trial Judge                          Hon. Robert J. Schuit

Trial Court:                         Contra Costa County Superior Court
Trial Judge:                         Hon. Theresa J. Canepa

Attorney for Appellant:              Lynette G. Moore
                                     Under Appointment by the Second
                                     District Court of Appeal

Attorneys for Respondent:            Kamala D. Harris
                                     Attorney General of California

                                     Gerald A. Engler
                                     Chief Assistant Attorney General

                                     Jeffrey M. Laurence
                                     Senior Assistant Attorney General

                                     Donna M. Provenzano
                                     Supervising Deputy Attorney General

                                     Christina Vom Saal
                                     Deputy Attorney General