[No. H000390. Sixth Dist. May 29, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
OVIDIO CASTRO CASAS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Gretchen O. Burford, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Martin S. Kaye and Cynthia Choy Ong, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## AGLIANO, P. J.—

### I

Defendant Ovidio Casas appeals from a judgment of conviction following a jury verdict finding him guilty of a violation of Penal Code section 261, subdivision (2) (forcible rape). Defendant was sentenced to three years in state prison. On appeal, he contends the judgment should be reversed on either of two grounds: (1) his due process rights were violated by a police officer's destruction of notes taken during investigation of the crime and (2) the trial court erroneously precluded defendant from introducing evidence of the victim's prior statement concerning sexual conduct.

### Statement of Facts

#### The Prosecution's Case

Celia D. and Maria S., who had known each other for about six months, were residing illegally in the United States. On May 27, 1983, they spent the evening dancing at El Cachinilla Bar. About 1 a.m., the two women went to Ms. S.'s room in a residential hotel. A number of illegal aliens lived in the hotel located above the bar. Ms. D. intended to wait in the room until Ms. S.'s daughter came to take her home. While she waited, she took off her shoes and jacket and put them with her purse on Ms. S.'s bed. The door to Ms. S.'s room was open.

About five minutes after the women arrived, defendant appeared at Ms. S.'s door. He offered the women some tacos. Ms. D. accepted a taco and ate it in Ms. S.'s room. Defendant then invited Ms. D. to his room across the hall. After she declined, he pulled her by the hand to his room. It happened so quickly, she did not have time to think. After they entered his room, he turned off the light and told her she was going to sleep with him. Ms. D. hit defendant and demanded that he let her go. A struggle ensued, and defendant hit her on her head, arms, and body. She repeatedly called for Ms. S. and scratched defendant on his face. Defendant threatened to kill her if she told her children or Ms. S. He also told her he would use a knife or gun on her if she did not cooperate. When he began to look for something in the room, she became nervous because she believed he was searching for a knife or a gun. Defendant then put her on the bed and had sexual intercourse with her.

After the incident, defendant allowed Ms. D. to use the bathroom down the hall while he waited outside. When she did not come out of the bathroom,

defendant returned to his room. She was then able to leave the building. She walked for about three blocks before hailing a patrol car which took her to the police station to report the incident.

Officer Charles Ellevan encountered Ms. D. in the street at approximately 2:50 a.m. She was barefoot, her hair was messy and she had been crying. He observed bruises on her arms. Since Ms. D. spoke only Spanish, Ellevan brought her to the station for a Spanish-speaking officer to interview her.

Officer Steve Becerra spoke briefly with Ms. D. at the station. He and Officer Ellevan then went with Ms. D. to defendant's room. Since there was no response when they knocked on defendant's door, they took Ms. D. to the hospital.

About 5 a.m., Officers Becerra and Ellevan returned to defendant's room. When defendant answered the door, the officers informed him they were there to investigate a rape. Defendant waived his rights and agreed to talk with them. Officer Becerra noticed a scratch near his eye. Officer Becerra did not question him extensively in his room. He asked defendant what he was doing about 1:30 a.m. and whether there had been a woman in his room. Defendant replied he had been in a bar until about 12:30, at which time he went to a taco stand and bought three tacos. After eating the tacos, he went to his room and slept until the police officers awakened him. Later, defendant stated there may have been a woman in his room.

Officer John Lara interviewed defendant at the station. He found defendant's answers inconsistent and evasive. Initially, defendant denied that a woman had been in his room. Later he stated there might have been two women there. Defendant requested to see a picture of the victim. When a picture was shown to him, he said he might know her. He indicated that she had been hurt by someone else and was blaming him. He also said it was possible he had sex with the victim, but he did not remember.

Dr. Benjamin Hafkenschiel, the physician who examined Ms. D. on May 28, found a number of bruises and scratches on her upper arms and on her thighs. She also had some bruises over the scapula. The bruises had been produced by a moderate amount of force. The multiple injuries and trauma were consistent with a sexual assault. Dr. Hafkenschiel remembered this particular case, because the majority of cases in his experience do not involve multiple injuries and a great deal of trauma. However, he did not express any opinion as to whether a rape had occurred.

*The Defense*

Defendant testified he met Ms. D. two months before the incident when she, Ms. S., and another friend went to a restaurant. After dinner, he drove

Ms. D. to a location near her house. He also saw her twice at the hotel where he lived when she was looking for Ms. S.

On the evening in question, defendant drank three to four beers in various bars. On his way home he purchased some tacos. When he returned to the hotel and saw Ms. S.'s door open, he entered and offered the tacos to the women. Two men were also in the room when he entered. Ms. S. asked him to get them to leave.

According to defendant, Ms. D. went voluntarily to his room. There she offered him sex for $20 and he paid her the amount. During intercourse, Ms. D. complained that her body hurt. Defendant offered to stop, but she told him to go ahead.

Later, Ms. D. threatened defendant if he wouldn't pay more than the $20 he had already paid. She then left to use the bathroom, after stating she would return to spend the night with him. When she did not return after 15 minutes, defendant decided to go out for coffee.

Defendant claimed he made inconsistent statements to the police because he was afraid of a scandal and that his wife would leave him if she discovered his infidelity. He and his wife were about to reconcile after a brief separation. However, on cross-examination defendant admitted he and his wife had been separated for two years and were divorced four and one-half months after the incident with Ms. D.

Maria S., who had been defendant's friend for many years, testified she went to the bar with Ms. D. She stated Ms. D. had planned to spend the night in her room. Ms. S. returned to the room first and was preparing for bed when Ms. D. arrived with Santos M. and another man. When defendant arrived, she asked him to get the two men out, which he did. Ms. D. then went to defendant's room. When she left, Ms. S. did not notice any bruises on her. Ms. S. stated she was not a heavy sleeper and would have heard any screaming. She did not hear screams on that particular night.

Santos M., who had been defendant's friend for seven or eight years, testified he danced with Ms. D. at El Cachinilla Bar on May 27. He left the bar with Ms. D. and a friend about one-half hour after Ms. S. did. He noticed no bruises on Ms. D. He went up to Ms. S.'s room behind Ms. D. Defendant entered the room shortly thereafter.

II*

. . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 889.

## III

Defendant contends the trial court abused its discretion by denying defendant's motion to introduce in evidence the victim's sexual solicitation of Santos M. shortly before the alleged rape.

Pursuant to Evidence Code section 782,[2] defense counsel submitted a written motion stating that if called to testify by the defense Santos M. would testify he was in Ms. S.'s room on the evening in question at the invitation of Ms. D. and Ms. D. offered him sex for money. Outside the presence of the jury, defense counsel supplemented his declaration by stating defendant would testify he paid to engage in sexual intercourse with Ms. D. The prosecution took the position that evidence of any solicitation of an act of prostitution by the victim fell within the scope of Evidence Code section 1103, subdivision (b)(1)[3] which provides such evidence is inadmissible to prove consent by the complaining witness and further, that the

---

[2]Evidence Code section 782 provides: "(a) In any prosecution under Section 261, 264.1, 286, 288a, or 289 of the Penal Code, or for assault with intent to commit, attempt to commit, or conspiracy to commit any crime defined in any such section, except where the crime is alleged to have occurred in a local detention facility, as defined in Section 6031.4, or in a state prison, as defined in Section 4504, if evidence of sexual conduct of the complaining witness is offered to attack the credibility of the complaining witness under Section 780, the following procedure shall be followed:

"(1) A written motion shall be made by the defendant to the court and prosecutor stating that the defense has an offer of proof of the relevancy of evidence of the sexual conduct of the complaining witness proposed to be presented and its relevancy in attacking the credibility of the complaining witness. [¶] (2) The written motion shall be accompanied by an affidavit in which the offer of proof shall be stated. [¶] (3) If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and at such hearing allow the questioning of the complaining witness regarding the offer of proof made by the defendant. [¶] (4) At the conclusion of the hearing, if the court finds that evidence proposed to be offered by the defendant regarding the sexual conduct of the complaining witness is relevant pursuant to Section 780, and is not inadmissible pursuant to Section 352 of this code, the court may make an order stating what evidence may be introduced by the defendant, and the nature of the questions to be permitted. The defendant may then offer evidence pursuant to the order of the court.

"(b) As used in this section, 'complaining witness' means the alleged victim of the crime charged, the prosecution of which is subject to this section."

[3]Evidence Code section 1103, subdivision (b), provides in relevant part: "(b)(1) Notwithstanding any other provision of this code to the contrary, and except as provided in this subdivision, in any prosecution under Section 261 or 264.1 of the Penal Code, or under Section 286, 288a, or 289 of the Penal Code, or for assault with intent to commit, attempt to commit, or conspiracy to commit a crime defined in any such section, except where the crime is alleged to have occured in a local detention facility, as defined in Section 6031.4, or in a state prison, as defined in Section 4504, opinion evidence, reputation evidence, and evidence of specific instances of the complaining witness' sexual conduct, or any of such evidence, is not admissible by the defendant in order to prove consent by the complaining witness. . . . [¶] (4) Nothing in this subdivision shall be construed to make inadmissible any evidence offered to attack the credibility of the complaining witness as provided in Section 782. [¶] (5) As used in this subdivision, 'complaining witness' means the alleged victim of the crime charged, the prosecution of which is subject to this subdivision."

evidence was irrelevant and also prejudicial under Evidence Code section 352.[4]

The court reserved ruling on both the procedural and substantive aspects of the motion. After defendant testified, a section 782 hearing was held. Ms. D. testified she never offered to have sex with Santos M. for money; she had never been arrested for, charged with or convicted of prostitution; and no one followed her upstairs to Ms. S.'s room. The trial court ruled as follows: "First of all, I would rule that pursuant to the Rios [sic] case I would resolve the conflicting interest of the complaining witness and the defendant, if any, in favor of the complaining witness in this case. I would rule that the evidence is not relevant. I would further rule that any slight relevancy on the proffered evidence would be totally and grossly outweighed by any prejudicial effect to the complaining witness in this case. [¶] It—testimony really doesn't go to her credibility. To the extent that it would be admissible under the code sections cited the Court in Rios [sic] noticed the bruises on the victim. And that that was a factor in the Rios [sic] case, as well. For those reasons the Court will deny the motion." In addition, the court ruled Mr. M. could not testify he was invited upstairs, but only that he went up behind Ms. D.

Defendant maintains solicitation of an act of prostitution is not "sexual conduct" within the meaning of Evidence Code sections 782 and 1103. He argues this court should construe "sexual conduct" as meaning only acts of sexual intercourse. We reject such a narrow construction of the statutory language. Here the proffered evidence consisted of Ms. D.'s statement that she offered to have sexual intercourse with Mr. M. for money. Such a statement reflects the speaker's willingness to engage in sexual intercourse. Thus, the evidence falls within the ambit of sections 782 and 1103.

The Legislature added section 782 and amended section 1103 to prevent a rape victim from being questioned extensively about any prior sexual history without a showing such questioning was relevant. (*California Rape Evidence Reform: An Analysis of Senate Bill 1678* (1975) 26 Hastings L.J. 1551, 1555-1556.) The Assembly Criminal Justice Committee reasoned the fear of personal questions deterred victims from filing complaints and resulted in a low percentage of reported rapes. (*Id.,* at p. 1554.)

■ Evidence Code section 782 vests broad discretion in the trial court to weigh the defendant's proffered evidence prior to its submission to the

---

[4]Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

jury and to resolve the conflicting interests of the victim and the defendant. (*People* v. *Rioz* (1984) 161 Cal.App.3d 905, 916 [207 Cal.Rptr. 903].) In addition, the statute reaffirms the role of Evidence Code section 352 in authorizing the trial court to exclude relevant evidence which is more prejudicial than probative. (*Ibid.*)

After discussing the relationship between sections 782 and 1103, subdivision (b), the *Rioz* court provided an example illustrating the wisdom of this statutory scheme. "A defendant charged with forcible rape makes the requisite written motion, supported by a sworn affidavit, offering to prove that the complaining witness, a convicted prostitute, agreed to have sex with the defendant for money and charged him with rape to get even with him when he refused to pay her. However, not only has the complaining witness denied that the sexual activity with the defendant was consensual [*sic*], but other evidence establishes without contradiction that the complaining witness was beaten in connection with the event. Given the potentially prejudicial impact of a prostitution conviction on the victim's testimony that she did not consent, the trial court, in the exercise of its discretion, may determine that the injuries suffered by the victim are wholly inconsistent with the defendant's offer of proof and either reject the sufficiency of the offer of proof in the first instance or exclude evidence of the prostitution conviction, after a hearing, pursuant to Evidence Code section 352." (*Id.*, at pp. 916-917.) The court also cautioned that "[g]reat care must be taken to insure that this exception to the general rule barring evidence of a complaining witness' prior sexual conduct, i.e., Evidence Code section 1103, subdivision (b)(1), does not impermissibly encroach upon the rule itself and become a 'back door' for admitting otherwise inadmissible evidence." (*Id.*, at pp. 918-919.)

*People* v. *Varona* (1983) 143 Cal.App.3d 566 [192 Cal.Rptr. 44], upon which defendant relies is not applicable. In that case, the two defendants were convicted of rape and false imprisonment and one of them was convicted of forcible oral copulation. The defendants had offered evidence the alleged victim had pled guilty to prostitution. The reviewing court found it was an abuse of discretion to exclude the evidence under section 782. However, the court acknowledged the particular facts were compelling. "We do not, here, hold that in every rape case where the prosecutrix is a prostitute, evidence of that fact must be admitted to show consent. The official records offered here show, not only that the woman was a prostitute, but: (1) that, in pursuit of her profession, she walked the night streets, in this very area, to solicit customers; and (2) that, in the practice of that profession, she not only engaged in normal intercourse, but that she specialized in oral copulation. The first fact is here of special significance in that it casts light on the woman's story that she was walking to the bus stop because the 'friend' who had driven her from the friend's home had callously refused to drive

two blocks further, to the bus stop because the friend had, at 11:30 p.m., an urgent appointment at home. The second fact is also very significant in that it tends to support the defense claim that the oral copulation, on which count IV was based, was voluntarily engaged in by the woman." (*Id.,* at pp. 569-570.)

■ We turn now to the facts before us. Prior to ruling on the motion brought under section 782, the trial court had heard the prosecution's case and most of defendant's testimony. Ms. D. denied that the sexual activity with defendant was consensual. Moreover, she had received multiple injuries consistent with a sexual assault to corroborate her version of the events of that night. Defendant testified he had met Ms. D. two months before, had gone to a restaurant with her and two friends, and had given her a ride after dinner. He subsequently saw her twice at his hotel when she was visiting Ms. S. On the evening in question it was he who induced Ms. D. to enter his room to eat a taco, at which point she offered him sex for $20. After they had sexual intercourse, she threatened him, but later decided to spend the night. There was no physical altercation.

The issues before the trial court were whether Santos M.'s testimony that Ms. D. had offered him sex for money shortly before defendant appeared in Ms. S.'s room was relevant to attack Ms. D.'s credibility and whether it was more prejudicial than probative. Both *Varona* and *Rioz* suggest the trial court may weigh the proffered evidence in light of all the evidence which has been received at the trial. Here, unlike *Varona,* the only evidence the victim was a prostitute consisted of defendant's and his friend's testimony. Further, defendant's account of his encounters with Ms. D. verges on the improbable. More importantly, however, Ms. D. had been beaten shortly after she left Ms. S.'s room and before she reported the incident to the police. In our view, the trial court's determination her injuries were inconsistent with the proffered evidence was entirely proper. Thus, defendant's offer of proof was only slightly relevant to attack Ms. D.'s credibility. Accordingly, we find no abuse of discretion by the trial court in excluding this evidence.

The judgment is affirmed.

Chang, J.,* concurred.

**BRAUER, J.,** Dissenting—I respectfully dissent. I join in the court's disposition of the *Trombetta* issue but cannot agree that the trial court was entitled to exclude the testimony of Santos M.

*Assigned by the Chairperson of the Judicial Council.

In a case in which 1) the defense was consent; indeed, the purchase of consent and 2) the main task of the jury was to determine whether to believe Ms. D. or the defendant, how could the majority say that it was "only slightly relevant" that Ms. D. was in the business of consenting?

" 'Relevant evidence' means evidence . . . having any tendency in reason to prove or disprove any disputed fact . . . ." (Evid. Code, § 210.) Where consent is in issue, there is an enormous difference in terms of relevance between a sexually active woman and a prostitute. The fact that a woman accepts a number of bed partners simply does not have a tendency in reason to prove that she will accept anybody or, specifically, that she accepted this defendant. In other words, promiscuity is perfectly compatible with selectiveness. This is why Evidence Code section 1103, subdivision (b) is an eminently reasonable enactment.

But a prostitute is in a different position. Her occupation compels her to abandon or at least suppress fastidiousness just as one will put up with a boor when employed by him whereas one wouldn't give the churl the time of day if one's livelihood didn't depend on his good will. I submit that when the issue is whether a woman was raped or had consensual relations, the fact that the woman is *then* in the business of prostitution has a strong tendency in reason to point to the truth of one of the alternative inferences.

In *People* v. *Varona* (1983) 143 Cal.App.3d 566 [192 Cal.Rptr. 44] it was held to be an abuse of discretion to exclude evidence that the complaining witness was a prostitute. Among the factors stressed by the court was that the proffered testimony would have shown that the woman had "walked the streets" in the very same area in question. Here the offer of proof was even stronger. It indicated that the complaining witness had allegedly solicited another customer in the same hotel and on the same occasion.

*People* v. *Randle* (1982) 130 Cal.App.3d 286 [181 Cal.Rptr. 745] is also in point. There, a defendant was convicted of forcible oral copulation. After judgment, defense counsel learned that the complaining witness had repeatedly solicited public sex acts in exchange for money, drugs and drinks in the town of her prior residence. In support of a motion for new trial, defendant submitted twenty declarations which spoke to such incidents as well as to the woman's reputation for dishonesty. The denial of the motion was held to be reversible error even though there was evidence of injuries to the woman. The court stated: "[¶] The newly discovered evidence would render a different result probable on retrial of this case. The core of the disagreement is whether the sex act occurred with consent or force. The victim told her story and the appellant told his. The new evidence does more than merely impeach Susan—it tends to destroy her testimony by

raising grave doubts about her veracity and credibility. Her credibility is central to the proof of the crime." (*Id.*, at p. 293.)

Justice Jefferson points out that "if the probative value of relevant evidence is strong or substantial, the weighing process [under Evidence Code section 352] points toward admission of the evidence, even though there is danger of prejudice to the opponent. The more substantial the probative value of relevant evidence, the greater must be the danger of prejudice to an adverse party, in order to justify a finding that the probative value is substantially outweighed by the danger of undue prejudice." (Jefferson, Cal. Evidence Benchbook (2d. ed. 1972) § 22.1, p. 289.)

In the face of the overwhelming weight of the proffered evidence, I regard its prejudicial effect to be slight; today, the same degree of opprobrium no longer attaches to prostitution as it did in more puritanical days, and the disapproval is tempered by pity. "[The] prejudice . . . [was] only that [which is] inherent in [the] relevance [of the testimony]." (See *Kessler* v. *Gray* (1978) 77 Cal.App.3d 284, 292 [143 Cal.Rptr. 496].)

*People* v. *Rioz* (1984) 161 Cal.App.3d 905 [207 Cal.Rptr. 903] posits in a dictum that evidence of a woman having been beaten is the type of evidence which would justify exclusion of prostitution under section 352. I disagree. If prostitution is highly relevant, the effect of violence is for the jury. It is of course a factor which points towards defendant's guilt but it is not inconsistent with a woman having consented to sex but drawing the line at unexpected brutalization which, when it occurred, provided the motive for revenge and fabrication.

I do not wish to be understood as saying that prostitutes do not have the right to say "no" or that they, by virtue of their trade, are beyond the protection of the rape law. But I do not consider it fruitful to speculate as to when it is permissible to exclude commercial sex activity from evidence under section 352 and when it is not. I merely suggest that here the question is not even close.

If the rejection of the proffered evidence was error, I have no doubt that the error was prejudicial. The case against the defendant was far from compelling. The defendant's version was corroborated in significant part by Ms. D.'s friend Ms. S. who testified that the victim went into defendant's room rather than being pulled into it and who, though a light sleeper, did not hear any screams. In the face of three witnesses who affirmed that Mr. M. was in Ms. S.'s room, Ms. D. denied that he was there at all.[1] And

---

[1] I do not understand on what theory the trial judge denied Mr. M. the opportunity to testify that he had been invited upstairs.

defendant's explanation of his evasive remarks to the police was not implausible. A wife may be just as upset at consensual infidelity as at any other kind.

Had Santos M. been allowed to testify to the solicitation, I consider it likely that defendant would have obtained a more favorable result. I have an uneasy feeling that a miscarriage of justice may have occurred here.

A petition for a rehearing was denied June 18, 1986, and appellant's petition for review by the Supreme Court was denied August 14, 1986.