Filed 10/29/21

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| JANE DOE et al., | B313874 |
| Petitioners, | (Los Angeles County Super. Ct. No. BC712514) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| MOUNTAIN VIEW SCHOOL DISTRICT, | |
| Real Party in Interest. | |


ORIGINAL PROCEEDINGS in mandate. Mary Ann Murphy, Judge. Petition denied with instructions.

Carrillo Law Firm, Luis A. Carrillo, Michael S. Carrillo, Laura M. Jimenez; The Senators (Ret.) Firm, Ronald T. Labriola; Esner, Chang & Boyer, Stuart B. Esner, and Holly N. Boyer for Petitioners.

No appearance for Respondent.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Lann G. McIntyre, Dana Alden Fox, Gregory M. Ryan, Edward E. Ward Jr., and Wendy S. Dowse for Real Party in Interest.

\*     \*     \*

A young woman sued a school district for negligently supervising the fourth-grade teacher who molested her in 2010 and 2011.  Prior to trial, the district sought to introduce evidence that the woman had been sexually abused by someone else in 2013.  The trial court admitted the evidence in part, reasoning that (1) the evidence fell outside of the scope of Evidence Code sections 1106 and 783[1] because those statutes regulate the admission of "the plaintiff's sexual conduct," which the court ruled did *not* include being involuntarily subjected to sexual abuse, and (2) admitting the evidence was proper, ostensibly to impeach the plaintiff, under section 352 because its probative value to contradict her anticipated testimony attributing all of her emotional distress to the teacher's molestation was not substantially outweighed by the danger of undue prejudice.  To resolve the woman's petition for writ of mandate challenging this ruling, we must confront the question:  Does the term "plaintiff's

---

[1]     All further statutory references are to the Evidence Code unless otherwise indicated.

sexual conduct" in sections 1106 and 783 (as well as Code of Civil Procedure section 2017.220) encompass sexual abuse to which a plaintiff has been involuntary subjected as well as the plaintiff's voluntary sexual conduct? We conclude that the answer is yes. Because section 783 requires a trial court, after following certain procedures, to engage in a section 352 analysis identical to the one the trial court undertook, we must also confront the question: Did the trial court abuse its discretion in finding that the probative value of the subsequent sexual abuse was not outweighed by the danger of undue prejudice? We conclude that the answer is no. Accordingly, we deny the writ petition and dissolve the stay of the trial proceedings, but instruct the trial court to either assess any prejudice flowing from the empaneled jury's exposure to the mentioning of the 2013 incident during opening statements, or begin the trial with a new jury.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Plaintiff's Complaint

S.D. (plaintiff) is one of several plaintiffs suing the Mountain View School District (the District). While plaintiff was a fourth-grade student at one of the District's elementary schools during the 2010-2011 school year, her teacher—Joseph Baldenebro—molested her. Plaintiff is suing the District for (1) negligence due to its (a) negligent hiring and retention of Baldenebro, (b) negligent supervision of him, (c) negligent failure to warn, train, and educate against his abuse, and (d) negligence per se in not reporting his abuse, and (2) sexual harassment (Civ. Code, § 51.9).[2] Among other things, plaintiff is seeking

---

[2]    Other student-plaintiffs' parents sued the District for negligent infliction of emotional distress in the same complaint.

3

compensation for the "physical, mental, and emotional damages and injuries resulting from the sexual harassment."

## II. Discovery

In response to discovery propounded by the District, the District learned that plaintiff had been "sexually molested" by a "teenage family friend" in 2013. The molestation inflicted "emotional and psychological trauma" upon plaintiff for the next several years, severe enough that she sought out "medical" and psychological treatment in 2016.

## III. Pretrial Rulings on Admissibility of 2013 Molestation

In May 2021, plaintiff filed a motion in limine to exclude evidence of her "sexual history with persons other than" Baldenebro; her motion cited sections 1106 and 352.

At a pretrial hearing on July 19, 2021, the trial court shared its preliminary view that section 1106 may not bar admission of the 2013 molestation because section 1106 "[t]ypically . . . relates to voluntary sexual activity." The court nevertheless invited the District to submit a motion seeking to admit the evidence for impeachment purposes under section 783.[3]

On the same day as the hearing, the District filed its 783 motion. Although the motion indicated that the District sought to admit evidence of the 2013 molestation "to establish an alternative explanation for [plaintiff's] psychological harm and condition" rather than to "'attack [plaintiff's] credibility,'" the District nevertheless moved to admit evidence of the 2013

---

**3** Although the trial court cited section 782, that section—as the District pointed out repeatedly in its filings with the trial court—is similar in effect to section 783 but applies only in criminal prosecutions (§ 782, subd. (c)); section 783 is the section applicable to "civil action[s] alleging conduct which constitutes sexual harassment, sexual assault, or sexual battery" (§ 783).

4

molestation under section 783—and hence for impeachment purposes—"out of an abundance of caution."

After additional briefing, the trial court held a further hearing during jury selection and before opening statements. The trial court ruled that the admissibility of evidence regarding the 2013 molestation was not governed by either section 1106 (as urged by plaintiff in her motion in limine) or section 783 (as suggested by the court). In so ruling, the court reasoned that those sections govern the admissibility of a victim's "sexual conduct," that "sexual conduct" must reflect voluntary sexual conduct or a "willingness to engage in sexual conduct," and that the 2013 molestation was necessarily "involuntary" because plaintiff was "a victim of inappropriate sexual behavior." Finding no need to apply the special analysis set forth in sections 1106 or 783, the court proceeded to analyze the admissibility of the 2013 molestation under the general rules governing relevance, including section 352. In this regard, the court found the 2013 molestation to be "highly and directly relevant" to whether plaintiff's emotional distress was caused solely by Baldenebro's conduct (for which the District was to be held responsible) or caused by a combination of his conduct and the 2013 molestation because both the 2010-2011 molestation and the 2013 molestation involved the "[s]ame conduct" and the "[s]ame injury" and because the 2013 molestation "undoubtedly added to [plaintiff's] damages." The court found that this significant probative value was "not substantially outweighed by the probability that its admission will necessitate undue consumption of time, create[] substantial danger of undue prejudice, confuse the issues, or mislead the jury" because the District planned to elicit the 2013 molestation through

5

"minimally invasive" questioning of plaintiff and the opinion of an expert witness as to its impact.

## IV.   Writ Proceedings

On July 29, 2021, the day after the ruling, plaintiff petitioned this court for a writ of mandate ordering the trial court to exclude evidence of the 2013 molestation and requested a stay of the trial proceedings pending our review of the trial court's evidentiary ruling. We granted a stay, but ultimately denied the writ (and dissolved the stay) on July 30, 2021.

The next court day, the parties made opening statements to the jury. After the court ruled that the District could mention the 2013 molestation in its opening statement, plaintiff mentioned the molestation in her opening statement. In its opening statement, the District stated that plaintiff's mental distress was "caused" "both" "by the . . . 2013 sexual abuse incident and by Baldenebro."

Plaintiff petitioned the California Supreme Court to review our denial of her writ and to stay the trial court proceedings. The Supreme Court issued a stay of proceedings on August 3, 2021, and then on August 9, 2021, granted the petition for review and remanded the matter to this court to issue an order to show cause. We did so, continued the stay of trial proceedings issued by the Supreme Court, and obtained further briefing and argument, and now issue this opinion.

## DISCUSSION

In her writ petition, plaintiff challenges the trial court's pretrial evidentiary ruling allowing the District to introduce evidence of the 2013 molestation. This challenge presents two questions on the merits: (1) Did the trial court err in ruling that section 1106 and section 783 do not apply to sexual conduct that

6

is involuntary, and (2) Did the trial court abuse its discretion in concluding that the probative value of this evidence was not substantially outweighed by the dangers of unfair prejudice?  It also presents a question of remedy.

As a threshold matter, however, we address the parties' competing claims of waiver.

The District has argued that plaintiff has waived any right to press her challenge to admitting the 2013 molestation because plaintiff mentioned it during her opening statement to the jury after we ruled but before the Supreme Court intervened. Because the plaintiff's decision to do so was a tactically reasonable response to try to make the best of the trial court's adverse ruling by "fronting" evidence that would be devastating if it first came from the opposing side, there was no waiver.  (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212-213 [""An attorney who submits to the authority of an erroneous, adverse ruling after making appropriate objections or motions, does not waive the error in the ruling by proceeding in accordance therewith and endeavoring to make the best of a bad situation for which [s]he was not responsible""].)

Conversely, plaintiff argues that the District has waived the right to argue that the 2013 molestation is admissible under section 783 to impeach plaintiff because the District repeatedly disavowed to the trial court any intention to use the evidence for impeachment.  Although the District's focus was certainly on admitting the 2013 molestation as substantive evidence under section 1106, and although the District repeatedly (and accurately) noted that section *782* was inapplicable, the District also argued that it was seeking to admit the evidence for impeachment purposes in an "abundance of caution."  Further,

7

our task is to review the propriety of the trial court's ruling and not its rationale. (E.g., *People v. Zapien* (1993) 4 Cal.4th 929, 976 (*Zapien*).) The scope of that ruling is admittedly ambiguous. On the one hand, the trial court ruled that the 2013 molestation fell outside the scope of section 782 (and, ostensibly section 783), and then analyzed its admissibility under section 352. On the other hand, the court made its ruling after invoking the statutes applicable only when admitting evidence for impeachment purposes, conducted a hearing as statutorily required, applied the same section 352 analysis called for by those statutes, engaged in a section 352 analysis that looked to the factors pertinent to impeachment (namely, how the 2013 molestation would impeach plaintiff's evidence regarding the cause of her emotional distress damages), and never expressly indicated that the 2013 molestation was admitted "for all purposes." Because an ambiguous or uncertain order should be construed in favor of its validity if possible (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631; *California School Employees Assn. v. King City Union Elementary School Dist.* (1981) 116 Cal.App.3d 695, 702; *Richter v. Walker* (1951) 36 Cal.2d 634, 639), we construe the trial court's order to be limited to admitting the 2013 molestation for impeachment purposes only.[4] At oral argument, plaintiff urged that the public policy underlying section 1106 requires us to construe the ambiguous order regarding admissibility under section 783 to be invalid, but we disagree that a statement of legislative purpose regarding specific

---

[4] Accordingly, we reject as inaccurate the District's representation that "[t]he hearing required by" "section 783" "was not conducted," and decline its consequent request to remand for "section 783 proceedings regarding this evidence."

statutes alters a general principle of appellate review.  The District remains free to disavow that limited purpose of impeachment on remand (and thus not to seek to admit the evidence at all), but what it chooses to do next does not affect our analysis now.

## I.    The Merits

### A.    *Section 1106*

In this writ proceeding, and consistent with one possible reading of the trial court's ambiguous order (albeit, not the one we elect to credit), the parties debate whether the 2013 molestation is admissible under section 1106 for *all* purposes, not just impeachment.  This turns on a question of statutory interpretation, which we independently examine.  (*Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1250.)

> In pertinent part, section 1106 provides that:
> "[i]n any civil action alleging conduct which constitutes sexual harassment, sexual assault, or sexual battery, opinion evidence, reputation evidence, and evidence of specific instances of the *plaintiff's sexual conduct*, or any of that evidence, is not admissible by the defendant in order to prove consent by the plaintiff or the absence of injury to the plaintiff, unless the injury alleged by the plaintiff is in the nature of loss of consortium."

(§ 1106, subd. (a), italics added.)  Section 1106 does not apply (1) "to evidence of the plaintiff's sexual conduct with the alleged perpetrator" except in civil actions under Civil Code section 1708.5 (*id.*, subds. (b) & (c)), or (2) to "evidence offered to attack the credibility of the plaintiff" under section 783 (*id.*, subd. (e)).

9

Here, the 2013 molestation would be admitted as substantive evidence to show "the absence of injury" stemming from Baldenebro's earlier molestation. Thus, the applicability of section 1106 to exclude evidence of the 2013 molestation turns on whether the 2013 molestation qualifies as "plaintiff's sexual conduct." Stated more broadly, we must decide whether a "plaintiff's sexual conduct" within the meaning of section 1106 includes sexual conduct that was inflicted upon the plaintiff involuntarily—that is, does it apply to sexual abuse? We hold that it does, and do so for three reasons.

First, interpreting "plaintiff's sexual conduct" to include both voluntary sexual conduct *and* involuntary sexual conduct is most consonant with legislative intent. "[T]he objective of statutory interpretation is to ascertain and effectuate legislative intent." (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 775.) Although our Legislature did not define the term "plaintiff's sexual conduct" for purposes of section 1106, section 1106 has two discernable objectives: (1) to exclude evidence of a civil plaintiff's character trait for promiscuity (because section 1106 is part of the broader cluster of rules (§§ 1101-1106) aimed at excluding evidence of one's character to prove conduct on a particular occasion (*Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063 ["we consider portions of a statute in the context of the entire . . . statutory scheme of which it is a part"])), and (2) to encourage civil complainants to bring lawsuits without fear of having the "sexual aspects of [their lives]" scrutinized (Stats. 1985, ch. 1328, § 1; *Vinson v. Superior Court* (1987) 43 Cal.3d 833, 841 (*Vinson*); *People v. Fontana* (2010) 49 Cal.4th 351, 362 (*Fontana*); *In re Venus B.* (1990) 222 Cal.App.3d 931, 936-937). The second objective has footing in the

10

"'inalienable right'" to privacy enshrined in the California Constitution. (*Vinson*, at p. 841 [so noting]; see generally, Cal. Const., art. I, § 1.) If the first objective were the *sole* objective of section 1106, it might make sense to construe "plaintiff's sexual conduct" only to reach voluntary sexual conduct—as well as other voluntary sexual conduct indicating a willingness to have sex—because only voluntary behavior says something about a person's character. (Accord, *Rieger v. Arnold* (2002) 104 Cal.App.4th 451, 461-462 ["sexual conduct" includes "conduct that reflects a willingness to engage in sexual activity"]; *Meeks v. AutoZone, Inc.* (2018) 24 Cal.App.5th 855, 874; *People v. Franklin* (1994) 25 Cal.App.4th 328, 334; *People v. Casas* (1986) 181 Cal.App.3d 889, 895.) But the second, privacy-focused objective applies with equal force to sexual conduct whether it is voluntarily undertaken or involuntarily inflicted. Although involuntarily inflicted abuse says nothing about the victim's character or traits thereof, revealing the details of one's prior sexual victimization still invades one's privacy.

Second, interpreting "plaintiff's sexual conduct" not to embrace involuntary sexual conduct would lead to absurd results, which we generally try to avoid when interpreting statutes. (*People v. Bullard* (2020) 9 Cal.5th 94, 106 [courts must "choose a reasonable interpretation that avoids absurd consequences that could not have possibly been intended"].) Because persons under the age of 14 are, in the eyes of the law, incapable of voluntarily consenting to sexual conduct (e.g., *People v. Soto* (2011) 51 Cal.4th 229, 247), excluding involuntary conduct from the ambit of section 1106 would allow for the admission of evidence of all sexual conduct of a person under the age of 14 (subject to the other rules of evidence, of course). Given the prevalence of sexual

11

abuse of children, excluding younger minors from the ambit of section 1106 would appear to be an absurd result we cannot sanction. (See, e.g., *Westley v. State* (2021) 251 Md.App. 365, 394, fn. 9 [making this point].)

Third, interpreting "plaintiff's sexual conduct" to exclude involuntary sexual conduct would also be against the weight of precedent both here in California and in our sister states. A handful of 31 year-old cases in California have interpreted the term "sexual conduct" to reach involuntary sexual conduct inflicted upon a victim. (*Knoettgen v. Superior Court* (1990) 224 Cal.App.3d 11, 14-15 (*Knoettgen*) [so holding, as to discovery of a victim's "sexual conduct"]; *People v. Daggett* (1990) 225 Cal.App.3d 751, 754, 757 [so holding, as to section 782].) And the weight of out-of-state courts have construed their states' statutes—which are similarly worded to section 1106—to reach involuntary sexual conduct. (See *People v. Parks* (2009) 483 Mich. 1040, 1046-1047 & fn. 23 (conc. opn. of Young, J.) [citing cases from 20 states].)

To be sure, this interpretation of section 1106 is not without consequence.

Unlike its counterpart in the Federal Rules of Evidence, section 1106 erects "an 'absolute bar' to the admission of evidence of 'specific instances of plaintiff's sexual conduct.'" (§ 1106, subd. (a) [declaring such evidence "not admissible"]; *Patricia C. v. Mark D.* (1993) 12 Cal.App.4th 1211, 1216; cf. Fed. Rules Evid., rule 412(b)(2) [evidence of a "victim['s] . . . other sexual behavior" admissible in civil cases "if its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party"].) Consequently, a person accused in a civil case of inflicting physical or psychological trauma upon the

12

plaintiff will be barred from adducing any evidence that the plaintiff's trauma was caused in part by sexual abuse inflicted by someone else and may therefore end up compensating the plaintiff for injuries inflicted by someone else. (Compare Civ. Code, § 1431.2 [joint tortfeasors are not to be held jointly and severally liable for noneconomic damages].) Absent section 1106, such outcomes would be less likely because courts would be called upon to balance the "right of civil litigants to discover [and introduce] relevant facts [bearing on causation] against the privacy interests of persons subject to discovery," bearing in mind that "plaintiff[s] cannot be allowed to make [their] very serious allegations without affording defendants an opportunity to put their truth to the test." (*Vinson*, *supra*, 43 Cal.3d at pp. 841-842.) But section 1106 does that balancing in advance, and has categorically struck that balance in favor of exclusion. (Stats. 1985, ch. 1328, § 1 ["The Legislature concludes that the use of evidence of a complainant's sexual behavior is more often harassing and intimidating than genuinely probative, and the potential for prejudice outweighs whatever probative value that evidence may have"].)

To be sure, section 1106's categorical bar is to some extent softened, if not potentially undermined, by two other statutes enacted in the same bill—namely, what is now Code of Civil Procedure section 2017.220[5] and section 783. (Stats. 1985, ch. 1328, §§ 2, 3.) Code of Civil Procedure section 2017.220 authorizes trial courts to permit "discovery concerning the plaintiff's sexual conduct" upon a "showing" of "good cause" based

___

[5] This section is derived from Code of Civil Procedure section 2036.1. (See *Knoettgen*, *supra*, 224 Cal.App.3d at p. 12; *Vinson*, *supra*, 43 Cal.3d at p. 843.)

13

on "specific facts." (Code Civ. Proc., § 2017.220, subd. (a).) And section 783, as discussed more fully below, authorizes trial courts in "civil action[s] alleging conduct which constitutes sexual harassment, sexual assault, or sexual battery" to admit "evidence of sexual conduct of the plaintiff" to "attack credibility" if they (1) conduct a hearing out of the jury's presence based on a written motion and affidavit with an offer of proof, (§ 783, subds. (a)-(c)), and (2) conclude that the evidence is "relevant" to impeachment and "not inadmissible pursuant to [s]ection 352" (*id.*, subd. (d)). Unlike section 1106, these statutes allow for a case-by-case approach that sometimes allows for the discovery and limited admissibility of a plaintiff's sexual conduct, which puts them in some "tension" with section 1106 (*People v. Rioz* (1984) 161 Cal.App.3d 905, 916-917 (*Rioz*); *People v. Chandler* (1997) 56 Cal.App.4th 703, 707-708 (*Chandler*)). Courts have tried to minimize this tension by construing "good cause" under Code of Civil Procedure section 2017.220 narrowly and by applying more scrutiny to the section 352 analysis under section 783 (as well as by highlighting the need for limiting instructions when evidence is admitted solely for impeachment purposes under section 783). (*Vinson, supra,* 43 Cal.3d at pp. 843-844 ["good cause" construed strictly to require "specific facts justifying inquiry"]; *Barrenda L. v. Superior Court* (1998) 65 Cal.App.4th 794, 801 ["'good cause'" requires more than "[t]he mere fact that a plaintiff has initiated an action seeking damages for extreme mental and emotional distress"]; *Mendez v. Superior Court* (1988) 206 Cal.App.3d 557, 572-573 [same], overruled in part by *Williams v. Superior Court* (2017) 3 Cal.5th 531; *Knoettgen, supra,* 224 Cal.App.3d at pp. 14-15 [courts must be "vigilant" when allowing discovery of prior sexual abuse]; *Chandler,* at p. 708 [courts should "narrowly

14

exercis[e]" their discretion under section 783]; *Rioz*, at pp. 918-919 [noting that "[g]reat care must be taken" to ensure section 783 does not "become a 'back door' for admitting otherwise inadmissible evidence"]). That tension is especially pronounced in cases like this one, where a plaintiff seeking to recover emotional distress damages will typically need to testify to establish that the defendant's conduct has inflicted emotional distress, and this testimony will make evidence of emotional distress involuntarily inflicted by others through sexual abuse relevant to impeach her testimony. In such cases, the very same evidence section 1106 categorically excludes becomes admissible—subject to balancing under section 352—under section 783 to impeach.

Despite the consequences and challenges that accompany section 1106, our Legislature has made its intent clear and we defer to that intent by holding that evidence of a plaintiff's sexual conduct—voluntary *or involuntary*—may not be admitted under section 1106 under any circumstances.

The District resists this conclusion with two arguments. First, relying on the facts in *Knoettgen, supra*, 224 Cal.App.3d 11, the District has argued that section 1106's bar only applies when the involuntary sexual conduct inflicted upon the plaintiff occurs *before* the molestation underlying the plaintiff's lawsuit. But *Knoettgen*'s interpretation of section 1106 is not tied to the temporal order of the sexual abuse suffered by a plaintiff, and we perceive no reason why it would be—the invasion of the plaintiff's privacy interests through the potential airing of the sexual abuse inflicted by others is the same no matter when it was inflicted. Second, the District has argued that its questioning of plaintiff regarding the 2013 molestation will be minimal, implicitly

suggesting that there is a "minimal questioning" exception to section 1106. There is not.

For these reasons, we reject the District's argument that the 2013 molestation should have been admitted for all purposes.

**B.**    *Section 783*

As alluded to above, section 783 authorizes a trial court to admit "evidence of sexual conduct of the plaintiff" "to attack [the] credibility of the plaintiff" if the (1) court adheres to specific procedural requirements, which are that (a) the defendant files a written motion that is "accompanied by an affidavit" making an "offer of proof" (§ 783, subds. (a) & (b)), (b) if the offer of proof is "sufficient," the court holds a "hearing out of the presence of the jury" (*id.*, subd. (c)), and (2) "the court finds that evidence proposed to be offered . . . is relevant [to impeach the plaintiff], and is not inadmissible pursuant to [s]ection 352" (*id.*, subd. (d)). Also as noted above, section 783 is an express exception to section 1106. (§ 1106, subd. (e).) Although we review questions of statutory construction de novo (*Kirby*, *supra*, 53 Cal.4th at p. 1250), we review a trial court's balancing of considerations under section 352 for an abuse of discretion. (*Chandler*, *supra*, 56 Cal.App.4th at p. 711 ["A trial court's ruling on the admissibility of prior sexual conduct will be overturned on appeal only if appellant can show an abuse of discretion"].)

Although the trial court erred in concluding that section 783 is inapplicable to involuntary sexual conduct, that error is of no moment because we are tasked with reviewing the court's ruling—not the rationale it used to get there. (*Zapien*, *supra*, 4 Cal.4th at p. 976.) As noted above, we have construed its ambiguous ruling as admitting evidence of the 2013 molestation solely for purposes of impeaching the plaintiff. Further, the trial

16

court adhered to all but one of the specific procedural requirements and the balancing requirements of section 783. Although trial court did not insist that the District comply with section 783's requirement that that a motion be accompanied by an affidavit including an offer of proof (§ 783, subd. (b)), this requirement would have been pointless in this case because the court *invited* the District to file the motion *after* hearing from the parties the undisputed fact of plaintiff's victimization in 2013. There is nothing to indicate that either party was denied its statutory right to question the plaintiff at the hearing (§ 783, subd. (c)); because this right exists whether a hearing is conducted under section 782 or 783, the parties were aware of this right when the court erroneously invoked section 782, yet opted not to question plaintiff. Thus, whether the trial court's *ruling* in this case was incorrect turns on whether the court's section 352 analysis was an abuse of discretion.

It was not, although it is admittedly a close question.

The 2013 molestation has substantial probative value in impeaching plaintiff's likely attribution of all of her emotional distress to Baldenebro's (and, by extension, the District's) conduct. Based on facts disclosed in discovery that was obtained without objection, the court found that the 2013 molestation involved similar conduct to the molestation by Baldenebro and thus inflicted similar "emotional and psychological trauma" upon plaintiff and thus "undoubtedly added to her damages," and this finding is supported by the evidence that plaintiff sought out "medical" and psychological treatment for that trauma in 2016.

The court's finding that admitting evidence of the 2013 molestation was "not substantially outweighed by the probability that its admission will necessitate undue consumption of time,

17

create[] substantial danger of undue prejudice, confuse the issues, or mislead the jury" is also supported by the record. Although the District's questioning of plaintiff or introduction of records would need to elicit sufficient evidence of the 2013 molestation's general character and gravity to be useful for impeachment purposes, the court had a basis for finding that the questioning of plaintiff could be "minimally invasive" in light of the court's careful regulation of the content and form of evidence presented regarding the 2013 molestation, the time needed to admit evidence of the 2013 molestation would be relatively minimal, and a limiting instruction could minimize the dangers of confusing or misleading the jury as well as blunt the undue prejudice flowing from its introduction. The balance is assuredly a hard one. As our Supreme Court noted in a related (albeit not identical context), "[w]here the [plaintiff] has attempted to link the defendant to . . . evidence of sexual activity on the complainant's part, 'the defendant should unquestionably have the opportunity to offer alternative explanations for that evidence, even though it necessarily depends on evidence of other sexual conduct.'" (*Fontana, supra*, 49 Cal.4th at p. 363.) This principle will not always justify admitting evidence for impeachment under section 783, but it was not an abuse of discretion to conclude that it does in this case where denying the District the ability to impeach plaintiff's attribution of all of her emotional distress to Baldenebro, should she do so, could render the District liable for trauma inflicted by the more recent 2013 molestation for which it could argue it is not responsible.

At oral argument, plaintiff suggested that section 783 is categorically unavailable when the proposed impeachment regards the plaintiff's consent or the absence of injury prohibited

18

as substantive evidence under section 1106. Although this would be one way to try to harmonize the inherent tension between sections 1106 and 783, it is not one supported by the plain text of either statuite: Section 1106 expressly names section 783 as an exception to its prohibitions, and section 783 looks to a case-by-case balancing of considerations under section 352.

For these reasons, we conclude that the trial court did not abuse its discretion in admitting the 2013 molestation for purposes of impeachment.

## II.    Remedy

At the time that we initially denied plaintiff's writ petition, the trial had yet to begin and, in light of our analysis, the proper remedy was to deny the petition.

Since then, however, the parties gave their opening statements and both parties referred to the 2013 molestation. The District did not limit its discussion of the 2013 molestation strictly to impeaching plaintiff's testimony. We do not know whether the jury that was selected is still intact or has been released in light of the delay associated with appellate review. To the extent the prior jury was discharged and a new jury must be selected, any danger arising from statements discussing the 2013 molestation for purposes beyond impeachment is gone. To the extent the prior jury remains intact upon remand, the trial court is in the best position to assess the impact of the parties' mention of the 2013 molestation on any still constituted jury. Accordingly, we deny the writ with instructions.

19

## DISPOSITION

Plaintiff's petition for a writ of mandate is denied. Upon remand, and if the previously selected jury is still constituted, the trial court is to assess whether any prejudice resulted from the District's discussion of the 2013 molestation during opening statement for purposes beyond impeachment, and to take appropriate action, if necessary, to eliminate that prejudice. The stay of the trial proceedings is hereby dissolved.

**<u>CERTIFIED FOR PUBLICATION</u>.**


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

CHAVEZ


20