Filed 12/29/25  P. v. Meyers CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>            Plaintiff and Respondent,<br><br>v.<br><br>JOSHUA NICHOLAS MEYERS,<br><br>            Defendant and Appellant. | A171131<br><br>(San Mateo County<br>Super. Ct. No. 23-SF-006032-A) |

Defendant Joshua Nicholas Meyers was found guilty by a jury of assault, false imprisonment by violence, sexual battery, and distributing a private image.  The jury was unable to reach verdicts on rape charges.  On appeal, Meyers contends the trial court abused its discretion by excluding evidence of the victim's sexual conduct under California's rape shield law, embodied in Evidence Code sections 1103 and 782.  Meyers also asserts the court failed to properly award presentence conduct credit.  We agree Meyers is entitled to additional conduct credits but otherwise affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Factual Background*

The victim and Meyers planned a birthday celebration for another individual, Bryce Abramson.  When Abramson arrived, the group drank alcoholic beverages together.  After Abramson left, the victim and Meyers

continued drinking.  Over the course of the evening, the victim consumed approximately ten shots of vodka.

Later that night, the victim was sitting in the backyard when she began vomiting.  She did not recall anything after that point until waking up in the dark in Meyers's bed while vomiting, before blacking out again.  She later awoke to find Meyers on top of her, holding her down, and preventing her from moving or sitting up.  She was crying and repeatedly asked Meyers to let her go.  Meyers told her to " 'go back to sleep.' "  The victim continued to struggle until she again lost consciousness.

The victim later awoke around 1:00 a.m., crying and upset, and asked Meyers if she could leave.  Meyers initially refused, responding " 'no,' " but eventually opened the door and allowed her to leave.  At that time, the victim was wearing Meyers's sweatpants, though she had no recollection of how she came to be wearing them.  She left Meyers's residence and texted Abramson, who picked her up.

The following day, Meyers video-called a friend and stated he had sex with the victim.  Meyers acknowledged the victim was very intoxicated and stated, "it might have been rape."  Meyers sent his friend photographs of the victim naked on his bed as "proof," accompanied by the message: "[Y]ou're welcome . . . .  You got to see at least.  It's not that great.  See, you didn't miss . . . out on anything.  Fuck that hoe."  Meyers also sent a video showing the victim's vagina and buttocks, in which Meyers used his hand to spread her buttocks apart.

During that same conversation, Meyers made additional statements identifying women he wanted to make his "sex slaves," said he " 'want[ed] to rape all women,' " claimed a former girlfriend " 'owes me pussy,' " and stated he "would rape the fuck out of" another woman he knew.

Meyers's friend's girlfriend overheard this conversation and contacted the victim. The friend, his girlfriend, and the victim subsequently met and discussed Meyers's statements. They showed the victim the photographs Meyers had sent. The victim was crying and upset. She stated she did not remember the events of the evening and that any sexual activity was not consensual.

Meyers's friend and his girlfriend then drove the victim to a hospital for a sexual assault examination. The victim informed the nurse she had showered twice since the incident and had engaged in unprotected intercourse with ejaculation the day after the incident.

*Procedural Background*

The San Mateo County District Attorney filed an information charging Meyers with assault with intent to commit rape (Pen. Code,[1] § 220, subd. (a)(1); count 1), rape of an unconscious person (§ 261, subd. (a)(4); count 2), rape by use of drugs (§ 261, subd. (a)(3); count 3), false imprisonment by violence (§§ 236, 237; count 4), sexual battery (§ 243.4, subd. (e)(1); count 5), and distributing a private image to cause emotional distress (§ 647, subd. (j)(4)(A); count 6). The jury found Meyers guilty of counts 1, 4, 5, and 6. The jury failed to reach a verdict on the two counts of rape, and the court declared a mistrial as to those counts. Following a second trial, the jury again could not reach a verdict as to the rape counts, and the court declared a second mistrial. The prosecution moved to dismiss those counts.

The court sentenced Meyers to an aggregate term of four years in prison.

---

[1] All further undesignated statutory references are to the Penal Code.

3

On appeal, Meyers asserts the trial court (1) erred by excluding evidence related to the victim's sexual encounter with a third party, and (2) miscalculated his presentence conduct credits. We address each argument in turn.

## I. Exclusion of Sexual Conduct Evidence

Meyers contends the trial court improperly excluded evidence of the sexual conduct of the victim because it was relevant to her credibility. We review a trial court's decision to exclude that evidence for abuse of discretion. (*People v. Vieira* (2005) 35 Cal.4th 264, 292.)

### A. Relevant Factual Background

After leaving Meyers's house and before learning she had been sexually assaulted, the victim had sexual intercourse with another individual, Bryce Abramson. During her medical-legal examination (MLE), the victim informed the examining nurse—while responding to standard intake questions—that she had engaged in unprotected sexual intercourse resulting in ejaculation. At that time, however, the victim did not disclose the sexual encounter with Abramson to the investigating police officer; she instead stated that Abramson had dropped her off at home. In a subsequent police interview, the victim informed officers that she had engaged in a consensual sexual encounter with Abramson the afternoon following the incident with Meyers.

After speaking with a rape trauma counselor, the victim subsequently contacted law enforcement and reported the encounter with Abramson as nonconsensual. She stated she went to Abramson's house, where he performed oral sex on her after she told him " 'no.' " She further reported that she awoke while Abramson was about to have sexual intercourse with

4

her, and she " 'just laid there' " while it occurred. The victim repeated this account during a forensic interview conducted several days later.

Before trial, the prosecution filed a motion in limine seeking to exclude evidence of the victim's prior sexual history or "sexual conduct" under the rape shield law and Evidence Code section 352. The prosecution acknowledged that the fact she had sexual intercourse with another individual after the charged assault may be relevant, but argued that the identity of the individual, the circumstances of that encounter, and any additional sexual history were irrelevant and should be excluded. The motion further sought to exclude evidence regarding the victim's report to police about Abramson on the ground that it would result in a mini trial on a collateral matter.

Meyers opposed the motion and moved to admit evidence of the victim's sexual conduct during the day of, and the day after, the assault "to attack her credibility." Meyers argued the victim lied to police about her subsequent sexual contact with Abramson, and that evidence of her changing accounts was necessary to challenge her credibility. Meyers asserted these inconsistencies reflected intentional falsehoods rather than confusion.

The trial court heard argument and excluded the evidence. The court acknowledged the evidence could have some relevance but concluded that Evidence Code section 352 warranted exclusion because admission would be unduly time consuming and would likely require a mini trial on whether the allegations against Abramson were true or false. The court found the probative value of the evidence was substantially outweighed by the probability that its admission would necessitate an undue consumption of time. The court further concluded admission of such evidence would "create a substantial danger of undue prejudice of confusing the issues and of

misleading the jury." The court explained, "[I]n this case before us where the defendant is charged with the rape of an unconscious person . . . , in terms of the actual act itself of sexual penetration, she has nothing to say on that subject, and she never has anything to say on that subject. So . . . evidence on her credibility, her credibility on that issue . . . is not the heart of the matter of what's going on." The court therefore excluded evidence concerning the victim's sexual encounter with Abramson.[2]

At trial, the victim testified that during the MLE she informed the nurse she had engaged in unprotected sexual intercourse with another individual the following morning, which resulted in ejaculation.

## B. Relevant Law

Under the rape shield law, "[e]vidence of the sexual conduct of a complaining witness is admissible in a prosecution for a sex-related offense only under very strict conditions. A defendant may not introduce evidence of specific instances of the complaining witness's sexual conduct, for example, in order to prove consent by the complaining witness." (*People v. Fontana* (2010) 49 Cal.4th 351, 362 (*Fontana*).)

However, such evidence may still be admissible "to attack the credibility of the complaining witness as provided in [Evidence Code] Section 782."[3] (Evid. Code, § 1103, subd. (c)(5).) But these statutes

---

[2] In advance of the retrial, both the prosecution and the defense again filed motions regarding the admissibility of the victim's sexual history, particularly her encounter with Abramson. Following an evidentiary hearing, the court again concluded that "any testimony about the sexual incidents that went on with Bryce Abramson the next day, other than the inference that they had sex," would be excluded.

[3] Evidence Code section 782 sets forth the procedures for admitting evidence of sexual conduct of the complaining witness (the alleged victim of

"reaffirm[ ] the role of Evidence Code section 352 in authorizing [a] trial court to exclude relevant evidence which is more prejudicial than probative." (*People v. Casas* (1986) 181 Cal.App.3d 889, 896 (*Casas*); see also *Fontana, supra,* 49 Cal.4th at p. 362; *People v. Mestas* (2013) 217 Cal.App.4th 1509, 1514.)  Under Evidence Code section 352, a trial court "may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

"The Legislature's purpose in crafting these limitations is manifest and represents a valid determination that victims of sex-related offenses deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy.  [Citations.]  By affording victims protection in most instances, these provisions also encourage victims of sex-related offenses to participate in legal proceedings against alleged offenders.  [Citations.]  Accordingly, our courts have properly exercised the discretion afforded by Evidence Code section 782 'narrowly' [citation], and we emphasize that '[g]reat care must be taken to [ensure] that this exception to the general rule barring evidence of a complaining witness'[s] prior sexual conduct . . . does not impermissibly encroach upon the rule itself and become a "back door" for admitting otherwise inadmissible evidence.' " (*Fontana, supra,* 49 Cal.4th at pp. 362–363.)

### C. Analysis

Meyers contends the victim's sexual encounter with Abramson was admissible for two reasons.  First, he argues the victim made inconsistent

___

the crime charged) when offered to attack the credibility of the complaining witness.

statements regarding the timing of that encounter, testifying at trial that it occurred in the morning after the incident while telling police either that it occurred later in the day or omitting reference to it altogether. Second, he asserts the evidence demonstrates an "admission of untruthfulness" because the victim acknowledged she was not forthcoming about the sexual encounter with Abramson when first questioned by the police. We are unpersuaded and find the trial court acted well within its discretion in excluding the evidence.

As an initial matter, evidence concerning the victim's sexual activity with Abramson squarely falls within the scope of the rape shield law. (Evid. Code, § 1103, subd. (c)(1) ["evidence of specific instances of the complaining witness'[s] sexual conduct, or any of that evidence, is not admissible by the defendant in order to prove consent by the complaining witness."]; *Casas*, *supra*, 181 Cal.App.3d at p. 895 ["The Legislature added [Evidence Code] section 782 and amended section 1103 to prevent a rape victim from being questioned extensively about any prior sexual history without a showing such questioning was relevant."].) Although Meyers asserts the evidence was offered solely to impeach the victim's credibility rather than to suggest consent, admission of such evidence carries a substantial risk of inviting precisely the inference the statute was enacted to prevent. Evidence that the victim engaged in sexual activity with another individual shortly after leaving Meyers's home would readily invite jury speculation that she welcomed his conduct or was more likely to have consented.

Nor do we see any meaningful probative value related to the specific details Meyers sought to introduce, such as when the encounter with Abramson occurred. Those details had no bearing on whether Meyers committed the charged offenses. As the trial court correctly observed, (1) the victim consistently reported she was unconscious during the incident

8

involving Meyers apart from certain moments, and (2) Meyers admitted photographing the victim while she was unconscious. Accordingly, the victim's later sexual activity shed no light on the material facts the jury was tasked with resolving.

The evidence was, at most, minimally relevant to the victim's credibility. The fact that the victim was initially reluctant to disclose a sexual encounter shortly after the assault does not suggest a propensity to fabricate allegations of rape. Nor does her initial characterization of the encounter with Abramson as consensual undermine her credibility regarding the charged offense. If anything, it undercuts the notion that she indiscriminately labeled consensual encounters as assaults. There was no showing that the victim's evolving disclosures reflected a willingness to lie about being raped, rather than the well-documented reluctance of sexual assault victims to disclose intimate details to law enforcement. (See *Casas*, *supra*, 181 Cal.App.3d at p. 895 [prior to the rape shield laws, "the fear of personal questions deterred victims from filing complaints and resulted in a low percentage of reported rapes."].)

Importantly, exclusion of this evidence did not deprive Meyers of a meaningful opportunity to challenge the victim's credibility. Defense counsel thoroughly examined the victim regarding her memory of being restrained, including inconsistencies between her testimony and statements to police. Defense counsel further elicited testimony from an investigating police officer that the victim had not previously "mentioned anything about her wrists being held down." The officer also testified the victim never mentioned being restrained in any way until shortly before trial; nor did she inform police that she had to "fight someone off of her." Thus, Meyers was able to probe

9

credibility through avenues directly related to the charged conduct, without resorting to evidence of unrelated sexual history.

Finally, the trial court reasonably concluded admission of the evidence would necessitate an undue consumption of time and risk confusing the jury. Litigating whether the victim's encounter with Abramson was consensual would have required a collateral inquiry into a separate alleged assault, diverting the jury's attention from the charged offense and effectively resulting in a mini trial on an unrelated matter.

Under these circumstances, we find no abuse of discretion in the trial court's determination that the limited probative value of the evidence was substantially outweighed by its potential for undue prejudice, jury confusion, and consumption of time. The ruling excluding the evidence was well within the bounds of reason. Because we conclude the trial court did not err in excluding this evidence, we need not address Meyers's argument that the error was not harmless.

## II. Presentence Conduct Credits

On appeal, Meyers contends that he was entitled to presentence conduct credit under section 2933.1, which limits presentence conduct credit for his crimes to 15 percent of the actual time in custody. The Attorney General agrees the trial court failed to calculate the presentence credit under section 2933.1.

Meyers was awarded 175 days credit for presentence custody. He thus was entitled to an award of 26 days conduct credit—i.e., 15 percent of 175. The parties agree on this calculation. Accordingly, we will modify the judgment to award Meyers 26 days conduct credit, for a total of 201 days credit for time served.

## DISPOSITION

The judgment is modified to award Meyers 26 days of presentence conduct credit under section 2933.1, for a total of 201 days credit for time served.  The judgment is affirmed as modified.

The trial court is directed to amend and correct the abstract of judgment to reflect the judgment as modified.  The trial court shall forward a copy of the amended and corrected abstract of judgment to the Department of Corrections and Rehabilitation.

PETROU, J.

WE CONCUR:

TUCHER, P. J.

RODRÍGUEZ, J.

A171131 / *People v. Meyers*

12